## THE STATE OF KANSAS v. E. C. CLARK.

### No. 11321.

1. WITNESS—*Sentenced to Reformatory—Infamous.* A person convicted of grand larceny and sentenced to confinement in the state industrial reformatory is deemed to be infamous and incompetent to testify as a witness in a criminal case unless the judgment of conviction has been reversed or a pardon granted. (JOHNSTON, J., dissenting.)

2. ——— *Conviction of Infamous Crime is Presumption of Incompetency.* Witnesses produced in court are presumed to be competent, but when it is shown that a witness offered has been convicted of an infamous crime a presumption of incompetency arises, and it then devolves on the party offering the witness to overcome the presumption by showing that the judgment of conviction is without force.

3. ACCESSORY BEFORE THE FACT—*Sufficient Information.* While the person who counsels, aids and abets the commission of a crime may be charged as a principal, the accused has no cause to complain of an information which charged in detail the commission of an offense by the principal, including the time when, the place where and the manner in which it was committed, and then followed with appropriate averment that the accused counseled, aided, abetted and hired the principal to commit the felony.

Appeal from Reno district court; MATTHEW P. SIMP-
SON, judge.  Opinion filed April 8, 1899.  Reversed.

*Carr W. Taylor*, county attorney, and *L. M. Fall*, for
The State.

*J. C. Ellis* and *H. Fierce*, for the appellant.

The opinion of the court was delivered by

JOHNSTON, J.:  E. C. Clark was charged with coun-
seling, aiding and abetting in the murder of W. C.
Boyd, and was found guilty of manslaughter in the
second degree.  The sentence imposed was imprison-
ment at hard labor for a term of five years, and the
defendant appeals, alleging that several rulings of the
court were erroneous and prejudicial.  The court sus-
tained the information as against an attack that it did
not specifically charge the defendant as though he was
a principal with the murderer of Boyd.  The informa-
tion first sets out at length the charge that Harry
Postlewaite murdered W. C. Boyd, stating the place
where, the time when and the manner in which it
was done.  It then proceeds in appropriate language
to allege that E. C. Clark did aid, counsel, abet, hire
and command Harry Postlewaite to commit the felony
and murder in the manner alleged.  The statute pro-
vides that '' any person who counsels, aids or abets in
the commission of any offense may be charged, tried
and convicted in the same manner as if he were a
principal.''  (Gen. Stat. 1897, ch. 102, § 228; Gen.
Stat. 1889, ¶ 5180.)  Under this provision the de-
fendant might have been charged as principal with
the murder of Boyd, and then if the evidence had
been sufficient to prove that he aided and abetted in
the murder he could have been convicted as if he were

the principal.   The claim is made that he can only be charged as a principal, and that, as the information charged him as accessory to the murder, it was insufficient.

He has no cause to complain.   The information as drawn states the nature and cause of the accusation against him with more directness and certainty than it would have done if it had charged him as principal. He was, therefore, better informed as to the attitude which the state would assume when the case was brought to trial than if the charge had been made in the manner he suggests.   The distinctions of the common law between principals in the first and second degree and accessories before the fact have been largely abolished, so that a guilty accessory may now be punished although the principal escape. (*The State v. Bogue*, 52 Kan. 79, 34 Pac. 410.)   In the cited case it is remarked that "if the crime be committed through the instrumentality of another the act of such instrument essential to establish the guilt of the person on trial must be shown," and it certainly is to the advantage of the defendant to set forth a complete statement of the crime, including the essential fact that it was committed through the instrumentality of another.   It is conceded that the charge is sufficient to constitute the defendant an accessory at common law, and we think it is sufficient under the statute.   It is clear that the defendant suffered no prejudice by reason of the form of the information.

It is strongly urged that error was committed in the admission of testimony of Harry Postlewaite. When he was offered as a witness in behalf of the state, an objection to his competency was made, and the preliminary inquiry disclosed that about two years before that time he had been convicted of grand

larceny in Sedgwick county, and being then only about seventeen years of age he was sentenced to be taken to the state industrial reformatory and there confined until the managers or trustees thereof should declare that he was fully reformed. It was not shown that a pardon had been granted nor that the sentence had in any way been abrogated. No claim of that kind was made, but on the other hand the contention is that the conviction and sentence did not affect his civil rights, and that therefore no pardon was necessary. If the conviction and sentence rendered Postlewaite incompetent to testify, it would seem that a *prima facie* showing of incompetency was made when proof of the conviction and sentence was offered. While all witnesses tendered in court are presumed to be competent and credible, proof of a conviction and sentence for an infamous crime creates a presumption of incompetency, and it then devolves on the party offering the witness to overcome the presumption by showing that the conviction and sentence are without force. The question remains, however, whether a person between sixteen and twenty-five years of age who has been convicted of grand larceny and is adjudged to be taken to and confined at the reformatory loses his civil rights and is incompetent to testify.

At common law a person found and adjudged guilty of an infamous crime is deemed incompetent to testify as a witness in any court of justice unless the judgment of conviction has been reversed or a pardon granted. Our statute has modified the common law to the extent that in civil cases the conviction for a crime affects the credibility but not the competency of witnesses. It is provided that "no person shall be disqualified as a witness in any civil action or proceeding by reason of his interest in the event of the

same as a party or otherwise, or by reason of his conviction of a crime, but such interest or conviction may be shown for the purpose of affecting his credibility.'' (Gen. Stat. 1897, ch. 95, § 330 ; Gen. Stat. 1889, ¶ 4414.)    See, also, *Winter v. Sass*, 19 Kan. 556.    No like provision is to be found in criminal procedure, and the one with reference to the competency of witnesses does not except convicts from the common-law rule of disqualification. (Gen. Stat. 1897, ch. 102, § 217 ; Gen. Stat. 1889, ¶ 5280.)    It has, therefore, been held that '' a person convicted of grand larceny and sentenced to imprisonment in the penitentiary is not a competent witness in a criminal case while the sentence remains unrevoked and such person not pardoned.'' (*The State v. Howard*, 19 Kan. 508.)    As the witness Postlewaite was not sentenced to imprisonment in the penitentiary, the question remains whether he is disqualified as a witness.

It is conceded that if the convict has been rendered infamous he is incompetent to testify in a criminal proceeding.    But what is it that renders him infamous? Is it the nature of the crime of which he is convicted, or the character of the punishment inflicted?    '' Infamy '' has been defined as a state of incompetency ''implying such a dereliction of moral principle as carries with it a conclusion of a total disregard to the obligation of an oath.'' (1 Greenl. Ev., § 373.)    At common law treason, felony and such crimes as involve falsehood and were deemed to affect the administration of justice work the disqualification of a witness ; and prior to the adoption of the federal constitution it was held that the infamy which disqualified a convict to be a witness depended upon the character of the crime and not upon the nature of the punishment. (*Pendock v. McKinder*, Willes, 665 ; Gilbert's Ev. 143 ;

2 Hawk., ch. 46, § 102.) The fifth amendment to the federal constitution, which provides that no person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury, etc., has given rise to frequent definitions of the term "infamous crime."

In some of the earlier decisions there was a tendency on the part of the courts to hold that the question of infamy was to be determined by the nature of the crime and not at all by the character of the punishment, but the supreme court of the United States settled that the test to be applied in determining whether an offense is an infamous crime is the character of the punishment which may be inflicted. (*Ex parte Wilson*, 114 U. S. 426, 5 Sup. Ct. 935; *Mackin v. The United States*, 117 id. 352, 6 Sup. Ct. 777; *In re Claasen*, 140 id. 200, 11 Sup. Ct. 735; *Ex parte McClusky*, 40 Fed. 71; 10 A. & E. Encycl. of L. 603; 1 Bouv. Law Dict. 1026.) In *Ex parte Wilson*, supra, however, it was held that the real criterion to be applied in such cases is whether the crime is one for which the statute authorizes the court to award an infamous punishment, not whether the punishment ultimately awarded is an infamous one. If the accused be in danger of being subjected to an infamous punishment the crime is deemed to be infamous, although infamous punishment may not be actually inflicted. If this rule be applied to the case under consideration, it results in the conclusion that Postlewaite was infamous and incompetent to testify. Grand larceny, being a felony, is ordinarily punishable by confinement and hard labor in the penitentiary. All agree that punishment of this character renders the convict infamous and disqualifies him as a witness. The punishment in the present case was, as we have seen,

confinement in the industrial reformatory, and the character of the punishment and discipline there is reformatory rather than ignominious or infamous; however, the convict was subject to the infliction of the severer punishment. · The statute under which he was sent to the reformatory does not arbitrarily fix the punishment; and whether he was sent to the penitentiary or to the reformatory was left to the discretion of the trial judge. It provides:

"Any person between the ages of sixteen and twenty-five who shall be convicted for the first time of any offense punishable by confinement in the state penitentiary may, in the discretion of the trial judge, be sentenced either to the state penitentiary or to the Kansas State Industrial Reformatory, and any person who upon such conviction shall be sentenced to imprisonment in the Kansas State Industrial Reformatory shall be imprisoned according to this act, and not otherwise, and the courts of this state imposing such sentence shall not fix a limit of duration thereof. The terms of such imprisonment of any person convicted and sentenced shall be terminated by the managers of the reformatory as authorized by this act; but such imprisonment shall not exceed the maximum term provided by law for the crime for which the prisoner was convicted and sentenced." (Laws 1895, ch. 200, § 7; Gen. Stat. 1897, ch. 134, § 11.)

Since it is left to the discretion of the trial judge, and the accused is in danger of being subjected to an infamous punishment, it falls within the rule announced by the federal authorities. As the statutes authorize the court to award an infamous punishment, the convict is deemed to be infamous, although the punishment actually administered be not infamous. In *People v. Park*, 41 N. Y. 21, it was held that a person under sixteen years of age who was convicted of burglary in the third degree was incom-

petent to testify as a witness, although he was sentenced to the house of refuge established for the reformation of juvenile delinquents.

The view of the court is that the conviction and judgment rendered Postlewaite incompetent as a witness, and that, as it does not appear that the disability has since been removed by a pardon or a reversal, the testimony should not have been received. His was the most important testimony that was offered in the case, and not being competent, a majority of the court hold that substantial error was committed in admitting it.

In the foregoing the writer has endeavored to state the views of the majority of the court as to the incompetency of Postlewaite, but he has been unable to agree in the conclusion reached. The authorities cited consistently hold that whether a crime is infamous is determinable by the punishment to which a convict is subject, rather than the nature of the crime committed. A marked illustration of this may be found in our statute, where a wilful libel is only a misdemeanor, and is therefore not infamous. Although involving falsehood, and of such a character as to render the offender unworthy of belief, it does not disqualify him as a witness ; while one who even permits a game of " craps " to be set up or conducted in his building or on his premises is punishable by imprisonment at hard labor, and is therefore infamous. In England, and in most of the states, statutes have been enacted, in one form or another, removing the disqualification of infamy, so that convicts may testify, but the conviction may usually be shown to affect the credibility of the witness. ( Greenl. Ev., § 373 ; 1 Bouv. Law Dict. 1028.) This policy obtains in Kansas, and to prevent the baffling of justice it is expressly

provided that the disability of infamy is removed as to civil cases. While that provision does not extend or apply to criminal cases, it is evident from the legislation on the subject that it was not intended that anything short of infamous punishment should take away the civil rights of the convict or incapacitate him as a witness. The right to testify is within the control of the legislature, and the tendency appears to be to open the doors and give parties the benefit of any testimony that is available.

Under the general rule and apart from the statute, the test of infamy is the punishment which might be inflicted, but our statute modifies that and makes the punishment actually inflicted the criterion. In *The State v. Howard*, 19 Kan. 508, as we have seen, this court held that imprisonment in the penitentiary disqualified the convict as a witness. In consonance with this view and as indicating the legislative purpose, the statute expressly provides that a sentence of confinement at hard labor for a term of years suspends the civil rights of the person sentenced. (Gen. Stat. 1897, ch. 100, § 376; Gen. Stat. 1889, ¶ 2574.) Imprisonment at hard labor has always been deemed infamous punishment, and under the statutes the civil rights of a convict are not lost except by a sentence actually imposing such punishment. Under the succeeding sections of the same chapter provision is made for removing the disability by a pardon by the governor; and there is a further provision that the disability of one who has committed his first offense while within the age of sixteen years is removed, and his competency restored by the expiration of the term of imprisonment to which he has been sentenced. By another provision the governor is authorized to pardon any person confined in the state penitentiary for

the purpose of restoring him to civil rights without notice and within ten days of the expiration of the term. ( Gen. Stat. 1897, ch. 20, § 8 ; Gen. Stat. 1889, ¶ 3972.) It is worthy of note that no like provision is made to restore persons who have been confined in the reformatory to their civil rights. Evidently it was the view of the legislature that only those sentenced to imprisonment in the penitentiary lost their civil rights or needed a restoration to competency. Certainly no reason can be imagined why an old criminal who merits ignominious punishment at hard labor should be favored over a young boy convicted of his first offense, who is deemed a fit subject for reform, and who is held with but little restraint for an indeterminate period, and may be paroled at any time when the managers of the reformatory decide from his conduct that he is reformed and is again fit to assume the responsibilities of citizenship.

A legitimate deduction from the statutory provisions is that only those condemned to imprisonment at hard labor forfeit their civil rights, and that a restoration to competency of those confined in the reformatory was not deemed necessary, and hence no provision for it was made. The federal authorities relied upon to sustain the opposite view are based on the fifth amendment to the constitution, which prohibits a prosecution for a capital or otherwise infamous crime except by indictment of a grand jury. The leading consideration in those cases was not whether a convict was worthy of belief, but rather whether a person could be prosecuted upon a particular charge unless he was presented or indicted by a grand jury. Having regard for his protection and constitutional rights at the trial, it was held that if the statute under which he is prosecuted authorizes infamous punishment and the accused is therefore in

danger of being subjected to such punishment, the offense for that purpose is to be deemed infamous. What the result of the prosecution may be cannot be foretold, and hence it must be decided when the prosecution is begun whether it shall be by indictment or information, and the courts logically determined that the matter of infamy for that purpose was measured by the charge and the statute. The New York case cited is hardly an authority, as the statute under which it was decided expressly provides that a person convicted of a felony was incompetent to testify, and the offense with which the convict was charged came clearly within the statutory definition of a felony. In this case the trial court, in ruling that Postlewaite was a competent witness and his testimony admissible, only followed an express decision of the court of appeals, which held that " a commitment to the state reformatory does not deprive a person of civil rights or involve infamy to his person as does a sentence to the penitentiary." (*In re Dumford*, 7 Kan. App. 89, 53 Pac. 92.) In the opinion of the writer, therefore, Postlewaite was a competent witness, and his testimony was properly received. We all agree that if competent and his testimony were admissible there was abundant evidence to sustain the verdict.

The other objections to the testimony are not deemed to be material, and we find nothing substantial in the objections to the rulings of the court in charging the jury. For the error mentioned, however, the judgment will be reversed and the cause remanded for a new trial.

DOSTER, C. J., and SMITH, J., concurring.

JOHNSTON, J., dissenting from the first paragraph of the syllabus and the corresponding portion of the opinion.