THE STATE OF KANSAS v. W. G. PAGE.

No. 11382.

1. INDUSTRIAL REFORMATORY—*Statute not Unconstitutional.* The act for the establishment and government of the state industrial reformatory, General Statutes of 1897, chapter 134, under which youthful offenders are sentenced to confinement without specification of time in the judgment, but which provides that the confinement shall not be for a longer period than the maximum to the state penitentiary for the particular offense committed, and under which the board of managers are authorized to grant paroles and absolute releases for exemplary conduct, etc., is not unconstitutional, as an infringement upon the judicial power of the courts or the pardoning power of the governor.

2. CRIMINAL PROCEDURE—*Presumption as to Age and Previous Conviction.* A defendant in a criminal action who would object that the evidence does not show him to be above the age of sixteen and below that of twenty-five, and who would object that it does not appear that he had not formerly been convicted of a felony, and therefore liable to sentence to the state industrial reformatory instead of to the state penitentiary, must make the objection to the court below, and not to the supreme court, for the first time; and in the absence of evidence in the record as to his age, it will be presumed that the court determined the fact from his appearance, and likewise indulged in the legal presumption of his innocence of former offenses, and therefore found him to be within the terms of the act allowing sentences to the reformatory.

Appeal from Pawnee district court; J. E. ANDREWS, judge. Opinion filed June 10, 1899. Affirmed.

*A. A. Godard,* attorney-general, *V. H. Grinstead,* county attorney, and *T. S. Haun,* for The State.

*G. Polk Cline,* for the appellant.

The State v. Page.

The opinion of the court was delivered by

DOSTER, C. J.: This is an appeal from a conviction of the offense of what is commonly designated as "statutory rape"; that is, of carnally knowing a female under eighteen years of age, without force and not against her will. Several claims of error are made : (1) That the court lost jurisdiction to try the case because there had been a continuance of it from one term to the succeeding one when the defendant was not present in court; (2) that a comparison of the testimony given upon the preliminary examination and upon the trial proper showed that the defendant was convicted of an offense which the prosecutrix did not have in her mind when she swore to the complaint and about which she did not testify upon the preliminary trial, wherefore the defendant did not have a preliminary trial for the offense of which he was convicted; (3) that the testimony showed that the offense of which the defendant was convicted was barred by the statute of limitations ; (4) that two like offenses were testified to under an information containing a single count and charging but a single offense, and between which the state was not required to elect for purposes of conviction; (5) that the court erred in certain of its instructions ; (6) that prejudicial evidence was erroneously admitted. We have examined all of these claims of error. None of them possesses any merit whatever. They are all predicated upon either partial or mistaken views of the case.

It would serve no useful purpose to con over the record for the purpose of showing wherein counsel for appellant has fallen into error. One question, however, deserves to be noticed. It raises the con-

stitutional validity of the act establishing the state industrial reformatory and providing for the punishment of youthful offenders in that institution. (Gen. Stat. 1897, ch. 134.) The judgment of conviction was in accordance with the provisions of that act. It reads as follows : ''That said William G. Page be and is hereby sentenced to confinement in the Kansas State Industrial Reformatory, there to remain until discharged by the authorities of said reformatory according to law.'' Section 11 of the act in question reads as follows :

''Any person between the ages of sixteen and twenty-five who shall be convicted for the first time of any offense punishable by confinement in the state penitentiary may in the discretion of the trial judge be sentenced either to the state penitentiary or to the Kansas State Industrial Reformatory ; and any person who upon such conviction shall be sentenced to imprisonment in the Kansas State Industrial Reformatory shall be imprisoned according to this act, and not otherwise, and the courts of this state imposing such sentence shall not fix a limit of duration thereof. The term of such imprisonment of any person so convicted and sentenced shall be terminated by the managers of the reformatory as authorized by this act; but such imprisonment shall not exceed the maximum term provided by law for the crime for which the prisoner was convicted and sentenced.''

Several sections succeeding this outline a system of punitory and reformatory discipline, the administration of which is confided to a board of managers. This system among other things provides for a record of merits and demerits in the inmates, and for parole privileges to those of exemplary conduct. Section 20 reads as follows :

''When it appears to the said managers that there is a strong or reasonable probability that any prisoner

will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society, then they shall issue to such prisoner an absolute release from imprisonment.   But no other petition or other form of application for the release of any prisoner shall be entertained by the managers.   Nothing herein contained shall be construed to impair the power of the governor to grant a pardon or a commutation of sentence in any case.''      ·

The punishment inflicted upon an offender sentenced to the reformatory under this act is the kind commonly spoken of as ''indeterminate,'' and it is assailed by counsel for appellant as violative of that constitutional provision which vests judicial power in the courts, and also that one which vests the pardoning power in the governor.   Similar acts have been for the same reason drawn into question in other courts but have been approved by a great preponderance of the authorities, and by a cogency and strength of reasoning entirely satisfactory to us.   ( *The State, ex rel. Attorney-general, v. Peters,* 34 Ohio St. 629, 4 N. E. 81;   *Conlon's Case,* 148 Mass. 168, 19 N. E. 164; *Miller v. The State,* 149 Ind. 607, 49 N. E. 894;   *The People, ex rel., v. State Reformatory,* 148 Ill. 420, 36 N. E. 76;   *George v. The People,* 167 Ill. 447, 47 N. E. 741; *contra, People v. Cummings,* 88 Mich. 249, 50 N. W. 310.)      ·

It is undeniably true that the sole power to provide for the punishment of offenders belongs to the legislature.   It alone has the power to define offenses and affix punishments.   Its authority in these respects is exclusive and supreme.   Courts are empowered only to ascertain whether an offense has been committed, and if so to assess punishment, within the terms of the law, for its commission.   It cannot be doubted that the legislature, in virtue of its exclusive and

sovereign authority over such matters, may affix con-
ditions to the punishment it ordains, and among
other things may set to it limits of duration, termi-
nable upon conditions.  To these conditions the courts
in assessing punishment must conform.  Into every
sentence of conviction the terms and conditions which
beforehand the legislature had prescribed enter as
much as though they were written into and made a
formal part of the record of sentence.  Into the be-
fore-quoted sentence of conviction the law wrote, as
provisos and as constituent parts of it, sections 11
and 20 of the act establishing the state industrial
reformatory.  (*Miller v. The State,* supra.)    It is not,
therefore, an interference with judicial authority, nor
an assumption of judicial power, for the supervisors
of penal institutions to administer the very conditions
of punishment or clemency which the law prescribed
and itself wrote into the judge's sentence.   Where
conditions of punishment are beforehand prescribed,
and form constituent parts of the sentence of convic-
tion, it is not an assumption of judicial power for an
administrative officer, acting within the law and the
terms of the sentence; to take upon himself the task
of ascertaining whether the conditions have been ob-
served.

Under the statute quoted, if rightly construed,
the sentence of the appellant was to the maximum
punishment, so far as duration was concerned, which
the law prescribed for the offense of which he was con-
victed.    The judge did not say so, but the law said so,
but at the same time it provided conditions under which
he can secure an earlier discharge.    If the law had
provided that the period of punishment prescribed by
it, or by the sentence of the court, might be extended
in duration, or made more onerous, in the discretion

of the managers of the reformatory, a different question would be presented, but it sets a limit beyond which confinement shall not be extended and prescribes punishment to which additions shall not be made. It provides for the mitigation, not the cumulation, of punishment. It vests in the board of managers no judicial power to sentence and condemn, but the gracious power to acquit and release. This power it must be confessed is assimilated to the pardoning power, which by the constitution is exclusively vested in the chief executive of the state, but the power to grant paroles on honor and the power to release from penal confinement are not the powers to pardon. A power to pardon is something more than a power to parole or a power to release from servitude. " ' Pardon is the remission of guilt ; amnesty, oblivion, or forgetfulness.' (And. L. Dict. 745.) The act of the board only shortens the term provided by the sentence and leaves the conviction of guilt unaffected." (*Miller v. The State*, supra, 623.) "The effect of such pardon by the king is to make the offender a new man ; to acquit him of all corporal penalties and forfeitures annexed to that offense for which he obtains his pardon, and not so much to restore his former, as to give him a new, credit and capacity." (4 Blackst. 402.)

"A pardon reaches both the punishment prescribed for the offense and the guilt of the offender, and when the pardon is full it releases the punishment and blots out of existence the guilt, so that, in the eye of the law, the offender is as innocent as if he had never committed the offense. If granted before conviction, it prevents any of the penalties and disabilities consequent upon conviction from attaching ; if granted after conviction, it removes the penalties and disabilities and restores him to all his civil rights — it makes him, as it were, a new man, and gives him a new

credit and capacity.'' (*Ex parte Garland*, 4 Wall. 333, 380.)

"The doctrine of the authorities is, that 'a pardon reaches both the punishment prescribed for the offense and the guilt of the offender,' and that 'it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense.' 'If granted after conviction, it removes the penalties and disabilities and restores him (the convict) to all his civil rights ; it makes him, as it were, a new man, and gives him a new credit and capacity.' (*Ex parte Garland*, 4 Wall. 333, 380 ; *United States v. Padelford*, 9 id. 531 ; *United States v. Klein*, 13 id. 128 ; *Carlisle v. United States*, 16 id. 147 ; *Knote v. United States*, 95 U. S. 149.) In the case last cited it is said that 'a pardon is an act of grace by which an offender is released from the consequences of his offense, so far as such release is practicable and within the control of the pardoning power, or of officers under its direction.' 'In contemplation of law, it so far blots out the offense that afterwards it cannot be imputed to him to prevent the assertion of his legal rights.' 'A pardon of treason or felony, even after an attainder, so far clears the party from the infamy and all other consequences thereof that he may have an action against any who shall afterwards call him traitor or felon ; for the pardon makes him, as it were, a new man.' (Bac. Abr., tit. Pardon [H].) 'There is only this limitation to its operation : it does not restore offices forfeited, or property or interest vested in others, in consequence of the conviction and judgment.' Id.'' (*Jones v. Board of Registrars*, 56 Miss. 766, 31 Am. Rep. 385.)

A pardon in its primary, and we think according to the above authorities its legal sense, is, as above defined, simply the remission of guilt. The effect of a pardon is to release from confinement ; to restore to the status of citizenship and to the enjoyment of civil rights. Mere release from confinement therefore is not a pardon, and none of the effects of a pardon other

than corporal liberty follows from it; hence, as a majority of this court have recently held, in *The State v. Clark*, ante, p. 450, 56 Pac. 767, a release from the state reformatory without a pardon from the governor did not remove the disqualification to testify as a witness.

The law allowing releases from the state reformatory before the expiration of the sentence, which, under the statute as rightly construed, is the maximum period of time, is of a kind with that which allows releases from the state penitentiary before the expiration of the period of sentence. In the former case it is made by the board of managers of the state reformatory, in view of the good conduct of the prisoner as shown by the record; in the latter case it is made by the warden, in view of the same conduct as shown by the same kind of record. In the former case the board of managers establish a system under which they determine the number and character of credit marks to be earned by a prisoner as a condition of release; in the latter case the law more largely determines it than do the prison officials; but in both cases the essential thing, to wit, what is good conduct entitling the prisoner to credit marks, is left, and left of necessity, to the managing officers of the respective institutions. The law having conferred upon them the power to mitigate punishments — to shorten terms of confinement — not to adjudge and condemn to imprisonment, it cannot be said to be judicial; and this power not being the power to remit guilt nor to restore to civil rights, it is not the executive power to pardon. It is administrative merely.

Objection is made that there is nothing in the record showing the appellant to be over sixteen years of age nor under that of twenty-five, nor that he had not been previously convicted of a penitentiary offense,

and therefore that the court did not have before it the jurisdictional facts authorizing sentence to the state reformatory. This objection was not made to the court below; it cannot be made for the first time in this court. A defendant in a criminal action who would object that the evidence did not tend to show him to be above the age of sixteen and below that of twenty-five, and who would object that it did not appear that he had not formerly been convicted of a felony, and therefore liable to sentence to the state industrial reformatory instead of the state penitentiary, must make the objection to the court below, and not to this court for the first time; and in the absence of evidence in the record as to his age it will be presumed that the court determined the fact from his appearance, and likewise indulged in the legal presumption of his innocence of former offenses, and therefore found him to be within the terms of the act allowing sentence to the reformatory. (*The State v. Robinson*, 38 Ore. 43, 48 Pac. 357.)

The judgment of the court below will be affirmed.