No. 19,883.

THE STATE OF KANSAS, *Appellee*, V. FRANCES PRETZ MARSHALL, *Appellant*.

SYLLABUS BY THE COURT.

1. CONTUMACIOUS WITNESS—*Evasive Answers—Sent to Jail— No Error*. Where the court in the exercise of its sound discretion finds it necessary to send a refractory witness to jail for evading a direct and candid answer to a competent question, no error is thereby committed in derogation of the rights of a defendant on trial at the time.

2. WITNESS—*Evidence of Convict—Statute Changing Rule of Evidence*. The recent enactment of senate bill No. 416 (Laws 1915, ch. 267), providing that no person shall be disqualified as a witness in a criminal action by reason of his conviction of a felony, renders a new trial unnecessary on account of the admission of the testimony of such a witness; since, if a new trial were ordered, such testimony would now be admissible beyond cavil or question.

Appeal from Riley district court; SAM KIMBLE, judge. Opinion filed May 8, 1915. Affirmed.

*H. E. Harlan*, of Manhattan, and *A. E. Crane*, of Atchison, for the appellant.

*S. M. Brewster*, attorney-general, *Charles Hughes*, county attorney, and *John E. Hessin*, of Manhattan, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal by a woman who was convicted in the district court of Riley county on two counts under the prohibitory law.

Only two matters presented by the assignment of errors are worthy of comment. The first of these grows out of the refractory conduct of a witness for the state. The witness was asked what it was that he purchased and drank. The transcript reads:

"Q. Well, now, in your best judgment, what was this that you obtained from Mrs. Pretz last winter

that you speak about at her house? A. Well, I don't hardly remember, it has been quite awhile back, but might have been beer and might not; I don't remember.

"The Court: Mr. York, now answer that question and answer it promptly, or I will send you to jail in about two minutes.

"A. What was the question?

"Q. What in your best judgment was this that you ordered from Mrs. Pretz that you paid fifty cents for last Christmas? A. Well, it might have been beer, probably it was.

"The Court: Mr. Sheriff, take this man to jail until he is ready to answer promptly.

"The Court: The witness declining to answer as ordered was sent to jail for direct contempt of court.

"Mr. Crane: We object to the statement of the order as made by the court as prejudicial to the right of the defendant in this case.

"Which objection was by the court overruled, the defendant at the time duly excepting.

"Mr. York thereupon resumed the witness stand and testified as follows, to-wit:

"By the Court: Q. Are you ready to answer the questions? A. Yes, sir.

"The Court: Read the question to him now.

"(Pending question read.)

"A. I think it was beer."

Counsel for appellant gravely contend that in thus vindicating the proprieties of the court room and the solemnity of judicial proceedings "the court sent him to jail because he did not testify positively that it was beer!" We do not think so. We have examined the entire transcript, and note that the witness had fenced and equivocated with his examiner, rather than give a frank and candid answer to this simple question. He also said he forgot what the liquor was, and dodged and shuffled about in his testimony until it was apparent that the witness was contumacious. It was time for the court to act, and it acted properly. The court did not seek to make the witness say it was beer that he purchased and drank. It merely took this legitimate mode of procuring a frank and sincere answer to

a competent question. Judges and courts in all ages and in all civilized jurisdictions have exercised this mode of dealing with contumacious witnesses. The administration of justice would be impossible without it. (Gen. Stat. 1909, §§ 2484, 2485.)

In 9 Cyc. 26, it is said:

"Independent of authority granted by statute, courts of record of superior jurisdiction [district courts in Kansas], whether civil or criminal, possess inherent power to punish for contempt of court. Such power is essential to the due administration of justice, and the legislature can not take it away or abridge it, although it may regulate its use. Statutes conferring the power are simply declaratory of the common law."

In the case of *In re Millington, Petitioner, &c.*, 24 Kan. 214, Mr. Justice Brewer said:

"A poor farmer, who resists the process of the court may be fully punished by a fine of one hundred dollars, but a railroad magnate who tries to rob the county or defies the process of the court, would laugh at such a fine. The legislature has wisely left the power of the court equal to the wrong attempted." (p. 222.)

It would be a novel and mischievous doctrine for us to hold whenever an episode like the foregoing arises in a criminal case that a mistrial has occurred, that the jury must be discharged, and a new trial ordered. There was no error here.

The next assignment of error grows out of the admission of the testimony of another witness, M. S. Callahan. Callahan had been convicted of perjury growing out of his false testimony given at a prior trial of this case. He had been sentenced to the penitentiary and paroled. The appellant contends that he was an incompetent witness, and decisions of this court are quoted in support of this contention. (*The State v. Howard*, 19 Kan. 507; *The State v. Clark*, 60 Kan. 450, 56 Pac. 767; *The State v. Page*, 60 Kan. 664, 57 Pac. 514.) These decisions do lend support to this view. But under a later decision, not necessarily different

from these (*Harmon v. Bowers,* 78 Kan. 135, .137, 96 Pac. 51), it was held that the civil rights of one sentenced to the penitentiary are not suspended until the actual incarceration begins.  All these decisions in effect recognize and are founded upon the rule of the common law that a person convicted of a felony is deprived of his civil rights, one of which is the right of a freeman to give testimony in court.  None of the other incidents of freedom—the right to bargain and sell, the right to employ attorneys to prosecute an appeal from a judgment of conviction for a felony, and many others— is abridged by a conviction and prior to incarceration. Why, then, should the civil right in question, the right to give testimony in court, be abridged or denied prior to incarceration?  Obviously, this distinction could not have arisen at common law, since there was no common-law right of appeal.  We know of no other civil rights which are automatically abridged or cut off by a con-. viction for a felony when the felon is at large on parole, except suffrage and its incidents.  (Const., art. 5.)  The restrictions upon his liberty are only those imposed by the conditions of his parole.  Within the conditions of his parole, the convicted person may otherwise exercise the privileges of a freeman.

But are these refinements and niceties of logic necessary in this case?  The legislature has just enacted senate bill No. 416  (Laws 1915, ch. 267), which, in part, provides:

"SECTION 1.  No person shall be disqualified as a witness in any criminal action or proceeding by reason of his conviction of a crime; but such conviction may be shown and be considered by the jury for the purpose of affecting his credibility.  The testimony of such witness may be taken subject to the provisions of this act."

That the legislature may change the rules of evidence, even to affect pending cases, is settled law. (*Jones v. Hickey,* 80 Kan. 109, 102 Pac. 247; *Reitler v.*

*Harris,* 80 Kan. 148, 102 Pac. 249; *Petersilie v. Mc-Lachlin,* 80 Kan. 176, 178, 180, 101 Pac. 1014.)    Nor does such a statute offend against due process of law. (*Hopt v. Utah,* 110 U. S. 574, 587; *Reitler v. Harris,* 223 U. S. 437, 442.)

If it be conceded that when Callahan's testimony was received it was inadmissible, it is now competent; and if this cause were reversed and remanded for a new trial his testimony would now be admissible under this new law.    This would be saying to the district court:    Because you erroneously admitted Callahan's testimony you must try this case anew; but you may now admit Callahan's testimony because it is no longer erroneous to admit his testimony!    The criminal code directs us and common sense impels us to avoid such an absurdity.    (Crim. Code, § 293.)

Appellant also complains that the state was granted a peremptory challenge after waiving its first peremptory challenge.    (Civ. Code, § 283; Crim. Code, § 208.) How this could have prejudiced appellant is not shown, and it can not be conjectured.    Still another error urged is the admission of the evidence of witness Donnelly, who testified what was said and done by him and Callahan in defendant's absence.    The relations of Callahan and defendant were established.    Callahan acted as the intermediary between Donnelly and defendant in effecting the sale, delivery and payment of the liquors.

The judgment is affirmed.