## MUTART v. PRATT, WARDEN OF STATE PRISON.

No. 2829.   Decided December 19, 1917.   (170 Pac. 67.)

1. STATUTES—TITLE—SUFFICIENCY. Laws 1913, c. 100, entitled ''An act to provide for the indeterminate sentence of persons convicted of crime,'' does not violate Const. art. 6, section 23, restricting acts to one subject to be clearly expressed in the title, although it impliedly supersedes certain portions of the Penal Code.[1]   (Page 248.)

2. CONSTITUTIONAL LAW—DISTRIBUTION OF POWERS—INDETERMINATE SENTENCE LAW.   Indeterminate sentence law (Laws 1913, c. 100) does not violate Const. art. 5, section 1, prohibiting one department of the government from encroaching on the powers of another, because transferring the power of fixing duration of sentences from trial courts to an executive body.   (Page 250.)

3. CRIMINAL LAW—INDETERMINATE SENTENCE—POWER OF COURT.   Under indeterminate sentence law (Laws 1913, c. 100), section 2, providing that persons sentenced for a definite period shall nevertheless be subject to its provisions, a trial court cannot fix the length or degree of punishment.   (Page 251.)

McCARTY, J., dissenting.

Appeal from District Court of Salt Lake County, Third District; *Hon. F. C. Loofbourow,* Judge.

Habeas corpus by Sheldon Mutart against Arthur Pratt, Warden of the Utah State Prison.

Judgment for relator.   Defendant appeals.

Reversed, with directions to dismiss the writ.

*A. R. Barnes* for appellant.

*Ray Van Cott* for respondent.

GIDEON, J.

This cause was argued at the October, 1915, term of this court, and a decision was thereafter rendered by a majority

---

[1] *State* v. *Third Dist. Court,* 36 Utah 90, 104 Pac. 750.

of the court, as it then existed, affirming the judgment of the lower court. Thereafter a petition for a rehearing was filed on behalf of the appellant and an order granting a rehearing was made in February of the present year. The cause was reargued during the May term of this year, and this opinion will be the opinion in the case in lieu of the majority opinion rendered at a former term.

The respondent entered a plea of guilty to the offense of attempted robbery in the district court of Salt Lake County on September 23, 1914, and thereupon sentence was pronounced against him that he be "confined in the state prison in and for the state of Utah for a period of nine months." On that judgment the responded was committed and delivered to the warden of the state prison for confinement. After nine months had expired, to wit, on July 3, 1915, the respondent as petitioner made application to the district court of Salt Lake County for a writ of habeas corpus, and upon a hearing on that application the writ was granted and the prisoner ordered released. From that order the matter is brought to this court on appeal.

The appellant defends his right to retain the custody of the defendant under the provisions of chapter 100, Laws Utah 1913, commonly known as the indeterminate sentence law. The first and second sections of that act, the only ones material here, are as follows:

"Section 1. Whenever any person is convicted of any felony or crime committed after the taking effect of this act punishable by imprisonment in the state prison, except treason or murder in any of the degrees thereof, the court in imposing sentence shall not fix a definite term of imprisonment but shall sentence every such person to the state prison, as the nature of the case may require, and every such sentence shall be without limit as to time, but imprisonment under such sentence shall not exceed the maximum term provided by law for the offense for which such person shall be convicted," etc.

"Sec. 2. If, through mistake or otherwise, any person shall be sentenced for a definite period of time for any offense other than treason or murder in any of the degrees thereof, such

sentence shall not be void, but the prisoner shall be deemed to be sentenced nevertheless as provided and required by the terms of this act, and he shall be entitled to all the benefits and subject to the liabilities of this act in the same manner and to the same extent as if sentence had been pronounced in the terms and manner required thereby.''

The respondent attacks the constitutionality of that act on two grounds: (1) That the purpose of the act is not sufficiently set out in its caption, and because it repeals many sections and parts of sections without direct reference thereto but by implication only; (2) that it deprives the trial judge of judicial discretion to determine the length of sentence, within statutory limitations, that should be imposed, and places that judicial function in an executive board. These objections will be considered in the order named.

Article 6, section 23, of the Constitution of the State of Utah provides:

''Except general appropriation bills, and bills for the codification and general revision of laws, no bill shall be passed containing more than one subject, which shall be clearly expressed in its title.''

The title of the act in question is: ''An act to provide for the indeterminate sentence of persons convicted of crime.'' That the act embraces but one general subject will, I think, be admitted by all; that is, the general subject of punishment to be inflicted upon persons convicted of the crimes mentioned in the act. It is not for that reason objectionable. It is contended that by implication the act repeals or is in conflict with numerous sections of the Penal Code, and that no mention of that is contained within its caption. Even if that were true it would not come within the ban of the Constitution limiting an act to ''one subject.'' The title of the act states as its object ''to provide for the indeterminate sentence,'' etc. The body of the act relates exclusively to the inflicting of punishment upon persons convicted of felonies other than murder and treason, and anything connected with the method or manner of punishment, it seems to me, would be included in and related to the general subject of providing for the indetermin-

ate sentence of persons convicted of crime. A majority of the states of the Union have like or similar provisions in their Constitutions, and there have been many decisions construing those different provisions. The general conclusion reached is clearly and ably stated by the Supreme Court of Iowa in *Cook* v. *Marshall County,* 119 Iowa, at page 397, 93 N. W. at page 377 (104 Am. St. Rep. 283) as follows:

"This, it has often been held, does not require a construction forbidding the inclusion in one act of all matters germane to the main proposition or purpose sought to be effected, even though they are not specifically mentioned in the title."

In *City of South St. Paul* v. *Lamprecht Bros. Co.,* 88 Fed. at page 451 (31 C. C. A. 585) it is said:

"This provision of the Constitution ought not to receive a narrow or technical construction, which will embarrass legislation by making laws unnecessarily restrictive in their scope and operation; but, like all provisions of the organic law, it should be fairly and liberally interpreted and enforced, so that it will serve to prevent the abuses at which it was aimed, without placing unnecessary restraints upon legislative action."

To the same effect are the following cases: *Johnson* v. *Harrison,* 47 Minn. 575, 50 N. W. 923, 28 Am. St. Rep. 382; *State* v. *Brassfield,* 81 Mo. 162, 51 Am. Rep. 234.

This act, being the latest expression of the lawmaking body on the subject embraced therein, must be accepted and enforced as enacted. Any prior laws in conflict with the provisions of the act are by implication repealed. The act itself is an affirmative statute, and any expressions or statements of what the law is which are clearly in conflict with existing or prior statutes must, of necessity, by implication, supersede or repeal the older or former acts of the same legislative power. As a principle of law that is well recognized and has been enforced by the courts so often that the citation of authorities would seem to be unnecessary. We are not, however, without a direct assertion of our own court in support of that position. *State* v. *Third Dis. Court,* 36 Utah, 90, 104 Pac. 750.

The second objection is that the act in question takes from

the trial judges a right and duty vested in them and gives that right and power to an executive body in no way charged with or given any judicial power or charged with any judicial duty. That the Legislature of this state has the sole power to fix the punishment to be inflicted for a particular crime, with the limitation only that it be not cruel or excessive, will not be questioned. That it may fix any punishment, subject to the above limitation, and leave no discretion whatever in the courts as to the extent or degree of punishment is a well-recognized and universally accepted doctrine, and under a statute fixing a definite period the court has no more discretion as to the punishment than the police officer whose duty it is to carry the punishment into effect, unless it can be contended that the mere pronouncing of the mandate of the law by a court, in which it is given no discretion, can be designated as a judicial function or duty. The right of the court to inflict any punishment at all is given it by the Legislature, and without some act on the part of the law-making power no such power or duty would be vested therein; and for that reason I fail to see wherein the act in question deprives the court of any power or authority guaranteed to it by the Constitution of this state.

Section 1, article 5, of the Constitution, provides as follows:

"The powers of the government of the state of Utah shall be divided into three distinct departments, the legislative, the executive, and the judicial; and no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted."

Provisions the same as or similar to the foregoing are contained in practically all the Constitutions of the different states. Many of the states have enacted laws similar to the one in question, and the constitutional authority of the Legislatures to enact such laws has been considered and determined by numerous courts of appeal; and the legality, beneficence, and humane ends sought to be reached by laws of the nature here in question have so often and so ably been defended by

the courts of the numerous states that no good could come from a repetition or restatement of those arguments in this opinion. *State* v. *Dugan,* 84 N. J. Law, 603, 89 Atl. 691; *Miller* v. *State,* 149 Ind. 607, 49 N. E. 894, 40 L. R. A. 109; *People* v. *Adams,* 176 N. Y. 362, 68 N. E. 636, 63 L. R. A. 406, 98 Am. St. Rep. 675; *People ex rel.* v. *Illinois State Reformatory,* 148 Ill. 413, 36 N. E. 76, 23 L. R. A. 139; *In re Marlow,* 75 N. J. Law, 403, 68 Atl. 171; *State ex rel. Attorney General* v. *Peters,* 43 Ohio St. 644, 4 N. E. 81; *State* v. *Page,* 60 Kan. 664, 57 Pac. 514; *State* v. *Stephenson,* 69 Kan. 405, 76 Pac. 905, 105 Am. St. Rep. 171; *Wilson* v. *Commonwealth,* 141 Ky. ·347, 132 S. W. 557; *State* v. *Perkins,* 143 Iowa, 55, 120 N. W. 62, 21 L. R. A. (N. S.) 931, 20 Ann. Cas. 1217; *State* v. *Duff,* 144 Iowa, 142, 122 N. W. 829, 24 L. R. A. (N. S.) 627, 138 Am. St. Rep. 269.

Neither is the sentence to be imposed under this act left in doubt as to its duration. It is, in effect, a sentence for the maximum period fixed by law subject to the rights to have that sentence reduced or terminated at an earlier date under rules established by the board of pardons, a body created by the Constitution for that very purpose.

Finally it is contended by the respondent that should the act not be held unconstitutional for either of the foregoing reasons, yet the appellant was bound by the judgment of the court limiting petitioner's sentence to nine months, and that if the state was not satisfied with the judgment as pronounced by the trial court it should have taken some action to have a proper judgment entered as authorized in section 1 of the act in question. The Attorney General, who appears for the appellant in these proceedings, vigorously insists that contention is untenable, and that the court had no power or authority to announce in its decision the length or degree of punishment; that when it had been regularly determined in the lower court that the defendant was guilty of the particular offense, then the sentence as provided under the law takes the place of the discretion or opinion of the judge, and any act or attempted act on his part to determine that question in the face of the positive prohibition of the statute

was entirely outside of his authority; that, in fact, under the provisions of the statute the power of the judge terminated when he pronounced sentence committing the prisoner to the custody of the worden of the state prison, and that that, in effect, is the only meaning that can be placed upon the language of the act.

The Attorney General further urged upon this court the fact, which is a matter of public record in the secretary of state's office, that a co-ordinate branch of the state government had placed the construction contended for by him upon the act and had enforced the same under that interpretation since its enactment; that the appellant in this case had acted under the direction of that construction placed upon the law by the executive department of the state. That view, or contention, is held by a majority of the justices considering this appeal.

It follows from the foregoing that the judgment of the lower court should be reversed with directions to dismiss the writ. Such is the order.

FRICK, C. J., and CORFMAN, J., concur. THURMAN, J., being disqualified did not sit in this case.

McCARTY, J.

I dissent. The judgment of the district court was that respondent be confined in the state prison for a definite period of time, namely, nine months. No appeal was taken from the judgment, nor was it in any way or respect changed by the trial court. If, as counsel for the state seem to contend, the term of imprisonment was for a shorter period than the law authorized the court to impose, the remedy, if the state desired to have the alleged error corrected, was by appeal to this court instead of leaving it for the warden of the state prison or the board of pardons to construe the law and determine what the sentence—judgment—of the trial court should have been, and in effect set aside the judgment rendered by the court and substitute therefor a judgment in accordance with what they, neither of whom are clothed with judicial powers, think it

should be. The question of whether the court did in fact err I shall refer to later.

No appeal having been taken, and no clemency having been granted to respondent by the board of pardons, the judgment as rendered, right or wrong, was, and is, binding upon the state, and every official department, and board having anything to do with its enforcement. Cooley's Const. Law, 164.

Chief Justice Marshall, in *Ex parte Watkins,* 3 Pet. 193, 7 L. Ed. 650, says:

"A judgment, in its nature, concludes the subject on which it is rendered, and pronounces the law of the case. The judgment of a court of record, whose jurisdiction is final, is as conclusive on all the world as the judgment of this court would be. It is as conclusive on this court, as it is on other courts. It puts an end to inquiry concerning the fact, by deciding it. * * * The cases are numerous, which decide, that the judgments of a court of record, having general jurisdiction of the subject, although erroneous, are binding, until reversed."

In *Chicago & A. R. Co.* v. *Wiggins Ferry Co.,* 108 U. S. 18, 1 Sup. Ct. 614, 617, 27 L. Ed. 636, Chief Justice Waite, speaking for the court, says:

"So long as the judgement stands, it cannot be impeached collaterally in the courts of the United States, any more than in those of the state, by showing that if due effect had been given to the laws it would have been the other way."

In *Manley* v. *Park,* 62 Kan. 553, 64 Pac. 28, the court says:

"If the court had jurisdiction to render judgment at all, its judgment * * * must be regarded as final, and, whether right or wrong, it must be upheld. The power to determine and decide a case includes the power to decide it wrong as well as to decide it right."

The title of the act in question is: "An act to provide for the indeterminate sentence of persons convicted of crime." The several provisions of the act are as follows:

"Section 1. Whenever any person is convicted of any felony or crime committed after the taking effect of this act punishable by imprisonment in the state prison, except treason or murder in any of the degrees thereof, *the court in imposing sentence shall not fix a definite term of imprisonment*

*but shall sentence every such person to the state prison, as the nature of the case may require, and every such sentence shall be without limit as to time, but imprisonment under such sentence shall not exceed the maximum term provided by law for the offense for which such person shall be convicted;* provided, that if a person be sentenced for two or more such separate offenses, sentence shall be pronounced for each offense and imprisonment thereunder may equal but shall not exceed the total of the maximum terms provided by law for such separate offenses, which total shall, for the purpose of this act, be construed as one continuous term of imprisonment. And, provided, further, that where one is convicted of a felony or crime that is punishable by imprisonment in the state prison, or by fine, or by imprisonment in the county jail, or both, the court may impose the lighter sentence, if it shall so elect.

"Sec. 2. *If, through mistake or otherwise, any person shall be sentenced for a definite period of time for any offense other than treason or murder in any of the degrees thereof, such sentence shall not be void, but the prisoner shall be deemed to be sentenced nevertheless as provided and required by the terms of this Act,* and he shall be entitled to all the benefits and subject to the liabilities of this act in the same manner and to the same extent as if sentence had been pronounced in the terms and manner required thereby.

"Sec. 3. The court, within thirty days from the date of any sentence imposed, as provided in this act, shall mail to the secretary of the board of pardons, a statement in writing, in which statement the court shall set out the term, within the maximum term provided by law for the particular offense, for which, in the opinion of said court, the prisoner so sentenced should be imprisoned, and also, any information the court may have which will be of aid to the board in passing upon any application for the parole, commutation of sentence, or pardon of the prisoner so sentenced. Such statement shall be presented to the board of pardons at the next regular meeting of the board following the receipt thereof, by the secretary, and shall be preserved in the files of the board."

The state seeks to uphold the action of the warden in refus-

ing to discharge respondent from custody by invoking the provisions of sections 1 and 2 of the act which I have italicized.

It will be observed that section 2 provides that judgments rendered in criminal cases which do not conform to or meet the requirements of section 1 shall be deemed to be in harmony therewith. In other words, we have a statute which provides that a judgment rendered by a district court imposing a certain penalty against the defendant shall by operation of law be deemed to impose a greater and more uncertain penalty. This the Legislature cannot do. The Legislature may undoubtedly provide by law what penalties shall be inflicted in criminal cases, but it devolves upon the courts, and the courts only, to render judgments imposing the penalty prescribed by statute. And while it is the duty of the courts to follow and be governed by the statute in such case, nevertheless, if a court should err in that regard, neither the legislative department nor that of the executive has power to correct the error. That is a judicial function which the courts only can exercise. Cooley's Const. Law, 164; Cooley's Const. Lim. p. 589; Sutherland's Stat. Const. section 10; 6 A. & E. Ency. Law, 1053, 1054.

Article 5, Constitution Utah, provides:

"The powers of the government of the state of Utah shall be divided into three distinct departments, the legislative, the executive, and the judicial; and no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted."

Nowhere in the Constitution is either the legislative or executive department "expressly directed or permitted" to change a judgment rendered by a court by increasing the penalty therein prescribed. True, the board of pardons may, under the Constitution, "remit fines and ·forfeitures, commute punishments, and grant pardons after convictions in all cases except treason and impeachments, subject to such restrictions as may be provided by law." Const. art. 7, section 12. The relieving of a party convicted of crime from the penalty·

prescribed by the judgment against him is one thing, while increasing or adding to the penalty imposed by the court is quite another and different thing. The Legislature may, no doubt, by appropriate legislation invest the board of pardons with powers relating to the granting of clemency in addition to those specified in the Constitution, but it cannot authorize or empower the board of pardons, the warden, or any other official, to increase or in any way add to the penalty prescribed by the judgment of a court. The board of pardons, under the Constitution, may shorten the time for which a prisoner is sentenced, but it cannot extend the term of imprisonment. I am therefore of the opinion that section 2 of the act is in conflict with article 5 of the Constitution, and hence cannot be upheld.

I am, however, of the opinion that the provision of section 1 providing for the imposition of indeterminate sentences against persons convicted of felonies, except treason or murder, can be upheld. This provision is referred to in the title of the act, and does not offend against the Constitution, and I am clearly of the opinion that it is not in conflict with any provision of the Penal Code. And I am also of the opinion that the act does not by implication, or otherwise, repeal any part of the Penal Code. The court may, in rendering judgment in cases where the defendant is convicted of a felony, other than treason or murder, impose a sentence for a definite term, or may impose an indeterminate sentence. An indeterminate sentence under the great weight of authority is, in effect, a sentence for the maximum period fixed by the law. *People* v. *Joyce,* 246 Ill. 124, 92 N. E. 607, 20 Ann. Cas. 472; *Commonwealth* v. *Brown,* 167 Mass. 144, 45 N. E. 1; *Miller* v. *State,* 149 Ind. 607, 49 N. E. 894, 40 L. R. A. 109; *State* v. *Page,* 60 Kan. 664, 57 Pac. 514, and cases cited. This, the maximum sentence, the court was authorized to impose before the act went into effect. As I read and construe the act it neither enlarges nor restricts the power of courts to determine and fix the terms of imprisonment from what it was before the act became a law. Nor does it extend the scope of the power of the board of pardons to grant clemency beyond that

specified in the Constitution. The power of the board in that regard is the same in all cases, regardless of whether the parties applying for clemency are serving terms of imprisonment under indeterminate sentences or under sentences imposed for definite and specified periods of time. In fact no change or enlargement of the power of the board is suggested either in the title or body of the act. When an indeterminate sentence is imposed, the defendant must serve the longest term fixed by the law, unless the board of pardons shall, in the meantime, commute his sentence or grant him a pardon.

The statute in question, as construed by the prevailing opinion, is not only in conflict with article 5 of the Constitution herein set forth, but also offends against article 6, section 23, and concluding part of section 22 of the same instrument. Section 22, so far as material here, provides that:

"No law shall be revised or amended by reference to its title only; but the act as revised, or section as amended, shall be re-enacted and published at length."

Section 23 is as follows:

"Except general appropriation bills, and bills for the codification and general revision of laws, no bill shall be passed containing more than one subject, which shall be clearly expressed in its title."

The scope and effect of the statute as construed by my associates in the foregoing opinion is so well and clearly illustrated in the opinion written by Mr. Justice Straup, then Chief Justice, on the former hearing of the case before this court that I herewith incorporate and adopt what the Chief Justice said on this point, namely:

"Prior to the statute in question we had a Penal Code and a criminal procedure defining offenses and fixing minimum and maximum terms of sentence, imposing duties on courts to pass sentence and determine and impose the punishment (C. L. 1907, sec. 4058), to hear testimony of witnesses in open court upon matters in mitigation or aggravation of punishment (secs. 4916, 4917), to grant at least two days after plea or verdict before pronouncing sentence, to require the accused to appear for judgment, to inform him of the proceedings

against him, to inquire of him if he has any legal cause why judgment should not be pronounced against him, and if no sufficient cause is made to appear, to pronounce and render judgment fixing the term of imprisonment within the minimum and maximum terms provided by the statute (secs. 4913-4915).

''We also had statutes giving the board of pardons power, for good conduct of the prisoner, to grant a reduction of the period of sentence, which statutes specified the deductions to be allowed by the board; and to establish rules and regulations for the parole of prisoners. Under these constitutional and statutory provisions the board of pardons, since statehood, granted reductions of sentences, paroled prisoners, commuted sentences, remitted fines, and pardoned prisoners. While the board had all these powers, yet, until this act was passed no one had supposed that it was clothed with power to itself fix or impose a sentence, or to enlarge it, or otherwise to determinate it, except to reduce, remit, commute, parole, or pardon.

''It is noticed that the title of the act is 'An act to provide for the indeterminate sentence of persons convicted of crime.' Neither in the title nor in the body of the act itself is any reference made to any existing statute, or any title or section thereof, nor does the act purport to amend or repeal anything, either specifically or generally. It is said that it is an independent and unrelated act. It purports to be so. But, confessedly, and as interpreted by the state and the warden, it directly involves and affects numerous, separate, distinct, and independent statutes. As so interpreted, it directly involves and affects the statute imposing duties on the court to pronounce judgment and to fix the punishment. It likewise directly affects and involves numerous statutes fixing and prescribing minimum and maximum terms of sentence. It directly affects and involves numerous other independent and distinct statutes relating to procedure, and powers and duties of courts after verdict. All these, it is said, have been abolished by necessary implication and intendment. The act also not only involves the duties and powers of courts, but, as interpreted, also involves  *  *  *  the powers and duties of the

board of pardons. The body of the act thus relates to several distinct, separate, and independent subjects so regarded and treated by both the Constitution and statutes. Yet, all these, it is contended, are, in the language of the Constitution 'clearly expressed in the title' by the words 'indeterminate sentence.'

''We have gone a good way in holding acts valid against objections that the subject of the act was not clearly expressed in the title, and in this we have gone quite as far as most courts. But, in my judgment, no case of this jurisdiction, or elsewhere, has gone to the extent of holding such an act as this within either the letter or the spirit of the Constitution. Here let the marked distinction be noticed between this title and that of acts of other states as to this subject and as compared with this how comprehensive and expressive they are as to the true character of the act and how uncircumscribed this is. From the title   *   *   *   one might well understand that the existing statute requiring a sentence for a definite period would be affected and that such enactments would follow as would modify or repeal such statute, and substitute one in lieu thereof requiring the imposition of an indefinite or an indeterminate sentence. But one would not understand that other and wholly independent statutes fixing a minimum sentence were to be repealed, or that the theretofore duties and powers of the courts in pronouncing a sentence or a judgment were to be restricted or taken from them and transferred to another tribunal; or that such legislation would follow which would affect and revolutionize a half dozen or more separate and independent statutes relating to separate and distinct subjects so treated and so regarded by the penal code and code of criminal procedure. True it is, that the title contains but one subject. But it is also true that the act relates to divers subjects which are not expressed nor indicated in the title in any manner. The title does not fairly nor truly indicate the real character of the act as interpreted by the state and as required to be interpreted to uphold the warden's action. The case hence comes, as I think, within the ruling of *Saville* v. *Corless,* 46 Utah, 495, 151 Pac. 51 [L. R. A.

1916B, 1104]. What we said there applies here. The very purpose of the constitutional provision requiring a subject to be clearly expressed in the title is to avoid just such wholesale legislation as this, modifying, diminishing, enlarging, and repealing numerous and divers acts relating to separate and distinct subjects, by what is designated as an independent act, and by denominating everything relating to the Penal Code and the criminal procedure as germane to it.''

To make an indeterminate sentence law effective as such, the board of pardons must have the power to terminate sentences imposed on persons convicted of crime before such sentences shall have terminated by operation of law. The prevailing opinion seems to hold, if I correctly grasp its import, that the act in question confers this power on the board of pardons. It is there held that an indeterminate sentence ''is, in effect, a sentence for the maximum period fixed by law subject to the rights to have that sentence reduced or *terminated at an. earlier date under rules established by the board of pardons, a body created by the Constitution for that very purpose.''* There is nothing in the act, as I read it, from which it may be inferred that the Legislature intended to enlarge or extend the scope of the powers of the board of pardons beyond what it was before the act went into effect. If, however, the act is susceptible of the construction given it by that part of the opinion which I have italicized, I am clearly of the opinion that it offends against the Constitution because the additional powers thus conferred on the board are not expressed, or referred to, in the title. An examination of the act in question, in connection with the provisions of the Constitution and the statutes defining the powers and prescribing the duties of the board of pardons before the act went into effect, will disclose that the act neither increases nor diminishes the powers of the board from what they were before it became a law. The Constitution, as herein pointed out, provides that the board shall have power to ''commute punishments and grant pardons after conviction.'' Section 1686x13, Comp. Laws 1907, authorizes the board to grant a reduction of sentence to such convict, as a reward for good conduct, who is sentenced for any period less

than life as provided in section 1686x14.   Section 4, c. 76,
Sess. Laws 1911, authorizes the board to grant an "additional
reduction of sentence for  *   *   *   good behavior and effi-
cient work while employed on state roads," etc., at what is
known and designated as the "convict camps." The powers,
and the only powers, of the board to shorten or reduce the
period of sentences, or to extend or grant clemency in any
form, are conferred by the foregoing statutes and the provi-
sions of the Constitution mentioned.   And the reducing of
the period of sentences and extending clemency, except as
therein provided, is an unauthorized exercise—a usurpation—
of power.

The only reference made to the board of pardons in the
act under consideration is found in section 3, which provides
that the court, within 30 days from date of sentence, shall mail
to the secretary of the board of pardons a statement in writ-
ing containing certain suggestions therein mentioned, and
"any information the court may have which will be of aid
to the board in passing upon any application for the parole,
commutation of sentence, or pardon of the prisoner so con-
victed." Clearly, there is nothing in this language that con-
fers any power on the board of pardons that it did not possess
before the act became a law.   Therefore that part of the
prevailing opinion wherein it is, in effect, held that the board
may terminate sentences of persons convicted of crime other-
wise than by commutation or pardon is, as I view it, judicial
legislation which is far-reaching and of the most drastic
character.

For the reasons herein set forth I am of the opinion that
the judgment of the trial court should be affirmed.