No. 24,828.

THE STATE OF KANSAS, ex rel. CHARLES B. GRIFFITH, Attorney-general, *Plaintiff,* v. JONATHAN M. DAVIS, Governor, FRANK J. RYAN, Secretary of State, NORTON A. TURNER, Auditor of State, and R. NEILL RAHN, Adjutant General, *Defendants.*

SYLLABUS BY THE COURT.

1. SOLDIERS' BONUS BILL—*Constitutional Law—Purpose for Which State May Contract Debts.* Under sections 5, 6 and 7 of article 11 of the constitution, the state has power to contract a debt of twenty-five million dollars for the purpose of paying Kansas soldiers and sailors for their services in the World War.

2. SAME—*State May Borrow Money to Defend State in Time of War.* Such a debt may be contracted under the authority given by sections 5, 6, and 7 of the constitution to borrow money to defend the state in time of war.

3. SAME—*Debt Contracted for a Public Purpose.* Such a debt is contracted for a public purpose, and taxes levied to pay that debt are levied for the same purpose.

4. SAME—*Chapter 255, Laws of 1921, Valid.* If chapter 255 of the Laws of 1921 is uncertain or indefinite in any particular, that uncertainty and indefiniteness can be removed by subsequent legislation not inconsistent with that act.

5. SAME. Chapter 255 of the Laws of 1921 does not violate section 1 or 2 of the bill of rights, or section 17 of article 2 of the constitution of this state.

6. SAME—*Title of Act Complies with Constitution.* The title of the act complies with the constitution.

Original proceeding in quo warranto. Opinion filed March 5, 1923. Judgment for defendants.

The State, *ex rel.*, v. Davis.

*Charles B. Griffith,* attorney-general, *John G. Egan, Dennis Madden,* assistant attorneys-general, *Frank H. McFarland,* of Washington, *George T. McDermott,* of Topeka, and *Robert H. Hasty,* of Wichita, for the plaintiff.

*S. B. Amidon, S. A. Buckland, H. W. Hart, Glenn Porter,* all of Wichita, *A. M. Harvey, Ralph T. O'Neil, Randal C. Harvey,* all of Topeka, *James W. Finley, Hugh P. Farrelly,* both of Chanute, and *Lee Bond,* of Leavenworth, for the defendants.

•

The opinion of the court was delivered by

MARSHALL, J.: Under sections 5, 6 and 7 of article 11 of the constitution of Kansas the legislature of 1921 submitted to the people of this state for adoption or rejection chapter 255 of the Laws of 1921. At the election, the law was adopted by the requisite constitutional majority—a majority of all the votes cast at that election. The law was again passed by the legislature of 1923. The law provides for the issue of twenty-five million dollars in bonds, proceeds of which are to be used in paying those who served in the World War from this state, at the rate of one dollar a day for each day of his entire service. Under the law, the governor, the secretary of state, the auditor, and the adjutant-general constitute a board charged with the administration of the law. The plaintiff asks that these officers be declared to have no power to issue the bonds nor to make the payments provided for.

1. The plaintiff contends that, under the constitution, the state does not have power to contract a debt of twenty-five million dollars for the purpose of paying Kansas soldiers and sailors for their services in the World War. To determine this contention, it is necessary to examine sections 5, 6 and 7 of article 11 of the constitution of this state. Section 5 reads:

"For the purpose of defraying extraordinary expenses and making public improvements, the state may contract public debts; but such debts shall never, in the aggregate, exceed one million dollars, except as hereinafter provided. Every such debt shall be authorized by law for some purpose specified therein, and the vote of a majority of all the members elected to each house, to be taken by the yeas and nays, shall be necessary to the passage of such law; and every such law shall provide for levying an annual tax sufficient to pay the annual interest of such debt, and the principal thereof, when it shall become due; and shall specifically appropriate the proceeds of such taxes to the payment of such principal and interest; and such appropriation shall not be repealed nor the taxes postponed or diminished, until the interest and principal of such debt shall have been wholly paid."

Section 6 reads:

"No debt shall be contracted by the state except as herein provided, unless the proposed law for creating such debt shall first be submitted to a direct vote of the electors of the state at some general election; and if such proposed law shall be ratified by a majority of all the votes cast at such general election, then it shall be the duty of the legislature next after such election to enact such law and create such debt, subject to all the provisions and restrictions provided in the preceding section of this article."

Section 7 reads:

"The state may borrow money to repel invasion, suppress insurrection, or defend the state in time of war; but the money thus raised shall be applied exclusively to the object for which the loan was authorized, or to the repayment of the debt thereby created."

The first sentence of section 5 provides for the creation of public debts for the purpose of defraying extraordinary expenses and making public improvements, but such debts are restricted to a total sum of one million dollars except as thereinafter provided. The phrase "except as hereinafter provided" implies that debts in excess of one million dollars may be contracted in the manner provided in subsequent provisions of the constitution. The remainder of section 5 evidently refers to debts of less than one million dollars, which must be authorized by a law enacted for that purpose. The language "except as hereinafter provided" necessarily refers to sections 6 and 7 of article 11. The three sections, 5, 6 and 7 of article 11, must be read together as if all were in one section. The law in question does not provide for making public improvements, and that proposition need not be further noticed.

Section 6 provides that a proposed law for creating a debt in excess of one million dollars shall "first be submitted to a direct vote of the electors of the state at some general election." Section 7 gives the state power to borrow money for military purposes.

Does chapter 255 of the Laws of 1921 provide for defraying extraordinary expenses? This depends upon the meaning of the expression "extraordinary expenses." What are such expenses? They are other than ordinary expenses. They are such as must be incurred by the state for the promotion of the general welfare compelled by some unforeseen condition which is not regularly provided for by law, such as flood, famine, fire, earthquake, pestilence, war, or any other condition that will compel the state to put forward its highest endeavors to protect the people, their property, liberty, or lives.

. When the World War commenced, the United States tried to avoid getting into it. We were finally compelled to enter it. A more dangerous situation never before confronted the civilized world. Almost everything that Americans hold dear and sacred was in danger. Property, life, liberty, and the principles of international morality and of international law were stakes that were contended for by our people. Kansas contributed liberally of brain, spirit, men, and money to preserve the things that we hold sacred. If the effort had not been made and had not been mightily supported by all our people, our enemies probably would have been victorious. Our defeat would have resulted in our suffering financially, physically, mentally, morally, and spiritually. Those who entered the service of the United States offered all, and many of them gave all, to protect those who remained at home. The war came suddenly; there was no time in which to prepare to meet it. Those who went to the front did not ask, nor have opportunity to ask, concerning their compensation. They cannot be adequately compensated. They were young. Many of them were in school or college. Others were just entering on their life's work. The time taken from them cannot be valued. Weariness, loneliness, sickness, pain, hunger, cold, and danger were endured by them. None of these things can be paid for. They cannot be measured by any standard. So far as it is within the power of the people of our land, either state or national, those men should be compensated. Compensation to them, although not promised, comes within the expression "extraordinary expenses" contained in section 5 of article 11 of the constitution of this state. Those expenses were incurred in defending the nation and, through the nation, the state, in time of war. The war was a war of the nation and of every state, county, city, or other political organization in the United States, and of every man, woman, and child in the nation. It was not a war fought by the United States in which the states were not interested; the states were as deeply and as vitally interested in the successful prosecution of the war as was the nation.

In time of war, it sometimes becomes necessary to take property and use it without giving compensation at the time, or even promising to give compensation; but no man will say that a law subsequently enacted for the payment of compensation for property thus taken does not provide for the payment of an extraordinary expense.

The men who went to the front, whether they volunteered or were selected, have as great a claim on organized society for what they gave for the public good as the man whose horses, or grain, or land, is taken for military purposes. If one can be paid for, the other can and should be.

The state and nation are under obligation to compensate their soldiers. Neither may do so, but the obligation exists. The expense incurred in discharge of that obligation is extraordinary—extraordinary because not within the previous contemplation of the lawmaking body of the state.

2. There is no threatened invasion of Kansas; there is no insurrection in this state; and the money to be raised is not to be expended to defend the state in time of future war. The World War is over, but it was very real in 1917 and 1918. If the central powers had won, no man can tell how soon we would have been fighting in our own state for the preservation of our institutions. We were defending Kansas in France as much as we would have been defending Kansas if the armies had been facing each other in New York, or across the Mississippi or Missouri rivers, or on the prairies in our own state. It was our good fortune that we could fight in Europe instead of the United States, but that does not detract from the fact that we were fighting in defense of our own rights. It was the necessity for that defense that compelled us to enter the war; it was that defense that kept us at the front; and when the need of that defense ceased, we stopped fighting. The expense incurred comes within section 7 of article 11 of the constitution of this state.

3. The plaintiff argues that the debt created by this law and the taxes that must be levied to pay that debt are not for a public purpose. It is conceded that taxes cannot be levied except for a public purpose. It is contended that the payments provided for in this law are to individuals as gifts or donations and not to discharge any obligation owing by the state to those individuals.

The first section of the law, chapter 255 of the Laws of 1921, reads:

"The state of Kansas acknowledges its indebtedness to, and promises to pay to each person, who was a resident of the state of Kansas at the time of his entering the service, and who served in the World War in any branch of the army, navy, or marine corps of the United States prior to November 11, 1918, and who was honorably discharged therefrom, the sum of one dollar per

day for each day of his or her service, which compensation shall be in addition to all pay and allowances made by the United States government."

The law recites that the payment shall be made to discharge an indebtedness that exists from the state to those who were residents of Kansas at the time they entered the United States army, navy or marine corps, and who served in the World War. The law does not provide for a donation or a gift. The law provides for the payment of a debt. The debt of the state exists. The state must say how much it owes. Those who rendered the service cannot say what the amount of the debt is. That debt is of such a nature that it cannot be computed in dollars and cents. The amount is that which the state says it is willing to pay.

Is the debt to be contracted and are the taxes to be levied for a public purpose? The defense of property, liberty, and life by organized society everywhere is now and always has been a public purpose. Nothing can be more public. Such defenses have often been carried on by war. Famine, fire, flood, and pestilence can be fought by other means that may require just as much and just as great an organized effort as war; but such an effort cannot accomplish a greater public purpose than is accomplished by defending political institutions through war. Most nations have recognized their obligation to their soldiers and have made an effort to compensate them after their services have been rendered. Soldiers enter the service of their country not under contract, whether they volunteer or are selected, but because government says, "You must go." There is no avoiding the performance of the service. The state commands, and the citizen must obey. The obligation is created in that way and it is not discharged until compensation is given.

Armed conflicts in which the United States must take part will again arise. We shall again depend upon our young men to respond to the call of our country. We shall then want them to respond with alacrity. We can now stimulate that response by paying compensation to those who have rendered service in the World War. A desire to perpetuate republican government, to maintain our free institutions, and to uphold our civilization, will be promoted by paying this compensation. Whether or not the payment of such an obligation and the levying of taxes for such payment is for a public purpose has been before the courts of this country on a number of occasions, and it has been held that the purpose was

public. (*Opinion of the Justices*, 211 Mass. 608; *Gustafson v. Rhinow*, 144 Minn. 415; *People v. Westchester Co. Nat. Bank,* 231 N. Y. 465; *State, ex rel. Hart, v. Clausen*, 113 Wash. 570; *State ex rel. Hart, v. Clausen*, 117 Wash. 260; *State, ex rel. Morris, v. Handlin*, 38 S. Dak. 550; *State, ex rel. Atwood, v. Johnson*, 170 Wis. 218.)

The *Opinion of the Justices* of the Supreme court of Massachusetts to the senate of that state was delivered in May, 1912, concerning a law passed providing for the payment of $125 to each veteran soldier or sailor then living who volunteered in the Civil War and served in the army or navy to the credit of that state and who was honorably discharged and received no bounty. The payment was made as a testimonial for meritorious service for the purpose of promoting loyalty and patriotism.

In *People v. Westchester Co. Nat. Bank*, 231 N. Y. 465, the court of appeals of New York held unconstitutional a law providing for the payment of forty-five million dollars to soldiers and sailors who served in the World War, but that court declared that the law promoted the public welfare and was not objectionable on the theory that it appropriated money for other than a public purpose. The law was there held unconstitutional under a provision of the constitution of that state which prohibited in any manner giving or loaning its credit to or in aid of any individual, any corporation, or any private undertaking, a provision not found in the constitution of this state.

The decision in *State, ex rel. Morris, v. Handlin*, 38 S. Dak. 550, was rendered in April, 1917. The act there in question had been passed to provide for payment to those who were in the Fourth South Dakota infantry on the Mexican border just prior to the commencement of the World War.

There are cases holding to the contrary, but their reasoning does not appeal to this court.

4. The plaintiff contends that the law is uncertain and indefinite and therefore invalid, and further contends that if it does not include those who died in the service or since, it is invalid. These contentions are not good, for the reason that if there is any indefiniteness concerning who are beneficiaries under the law or if the law is uncertain in any particular, it can be made certain and definite by subsequent legislation not inconsistent with the law approved by the people. The law was enacted by the people of

this state acting in their sovereign capacity and must be upheld unless it clearly violates some constitutional provisions.

5. The state argues that the law violates sections 1 and 2 of the bill of rights and section 17 of article 2 of the constitution of this state. Section 1 of the bill of rights reads:

"All men are possessed of equal and inalienable natural rights, among which are life, liberty, and the pursuit of happiness."

Section 2 of the bill of rights reads:

"All political power is inherent in the people, and all free governments are founded on their authority, and are instituted for their equal protection and benefit. No special privileges or immunities shall ever be granted by the legislature, which may not be altered, revoked, or repealed by the same body; and this power shall be exercised by no other tribunal or agency."

Section 17 of article 2 of the constitution reads:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state."

Wherein this law violates any one of these constitutional provisions is not apparent. The law does not deny to anyone life, liberty, or the pursuit of happiness; it does not deny to anyone the equal protection or benefit of the law; no privilege or immunity is granted; and the law is of a general nature and has uniform operation throughout the state.

6. The title to the act is questioned. The title reads, "An act relating to compensation for veterans of the World War." Wherein that title is deficient or does not comply with the constitution is not indicated. There is nothing in the act that is not comprehended within the title and there is only one subject of legislation embraced in the law. The title complies with all the constitutional provisions.

In addition to the matters which have been discussed, the court concludes:

That the legislature had power to submit the law to the people for adoption or rejection.

That the people had power to adopt the law.

That the law does not authorize a payment of public money for a private purpose.

That the law does not create an inequality.

That it is uniform in its operation.

That it is not special in character,

That the law does not delegate legislative power to an administrative board.

The demurrer of the defendants to the petition of the plaintiff is therefore sustained. The application of the plaintiff that the defendants be declared not to have power to carry the law into execution is denied, and judgment is rendered for the defendants.