No. 25,419.

HAROLD S. DEW, *Appelle,* v. JONATHAN M. DAVIS, Governor;
FRANK J. RYAN, Secretary of State; NORTON A. TURNER, Auditor;
R. NEILL RAHN, Adjutant General; BEN S. PAULEN, Lieutenant
Governor; CARL R. WHITE, Director of Compensation, *Appellees.*

### SYLLABUS BY THE COURT.

1. SOLDIERS' ADJUSTED COMPENSATION ACT—*Soldier Entitled to Compensation
From Date of His Enlistment.* A claimant under the adjusted compensa-
tion act who enlisted and was sworn into the naval service of the United
States and was paid for such service, is entitled to compensation under the
adjusted compensation act from the time of his enlistment, although he was
ordered to return to his home and await further orders.

2. SAME—*Statute Limiting Compensation to June 30, 1919, Valid.* Chapter 5
of the Laws of 1923, Special Session, fixing June 30, 1919, as the limit of the
emergency for which compensation shall be paid to veterans of the World
War, is valid.

3. SAME—*Statute Relating to Attorney's Fee Interpreted.* The statutory pro-
vision giving the power to the court to determine and allow an attorney's
fee to an applicant for adjusted compensation is a mere supervisory power
conferred on the court over attorneys' fees to be charged by attorneys for
their services to their clients, and imposes no charge on the county.

4. SAME—*Proper Assessment of Costs on Appeal.* Under the provisions of sec-
tion 7 of chapter 205, Laws of 1923, relating to adjusted compensation, the
costs in appeals may be assessed to the county.

Appeal from Osage district court; J. T. PRINGLE, judge *pro tem.* Opinion
filed January 12, 1924. Affirmed in part and reversed in part.

*Charles B. Griffith,* attorney-general, *John F. Rhodes,* assistant attorney-
general, and *A. K. Stavely,* county attorney, for the appellants.

*A. B. Crum,* of Lyndon, for the appellee.

*Thomas Amory Lee,* of Topeka, and *James W. Finley,* of Chanute, as *amici
curiæ.*

The opinion of the court was delivered by

HOPKINS, J.: The action was one to recover under the adjusted
compensation act. The plaintiff prevailed and the defendants ap-
peal.

An agreed statement of facts, on which the case was tried, con-
tained the following:

"That Harold S. Dew, a resident of Osage county, Kansas, enlisted in and
was sworn into the regular United States navy on June 8, 1917, at Kansas
City, Missouri; that immediately following his enlistment he was sent home

to await orders, where he remained until he was ordered to the Naval Training Station at San Francisco on September 7, 1917; that during the time which elapsed between his enlistment and his being ordered to San Francisco, said Dew drew full pay from the United States navy; that said Dew remained in the naval service until he was honorably discharged on Oct. 2, 1919, during which time he drew full pay; that on the 30th day of April, 1923, said Dew filed his claim for adjusted compensation with the county board of Osage county, Kansas, claiming compensation at the rate of $1.00 per day for the full period from June 8, 1917, to Oct. 2, 1919; that said plaintiff was allowed adjusted compensation by the Board of Adjusted Compensation of the state of Kansas on claim No. 703, in the sum of $662.00, being at the rate of $1.00 per day for the period from Sept. 7, 1917, to June 30, 1919; that said board refused to grant plaintiff compensation for the period from June 8, 1917, to Sept. 7, 1917, and for the period from June 30, 1919, to Oct. 2, 1919; that on the 19th day of September, 1923, said plaintiff duly filed in the district court of Osage county, Kansas, his written notice of appeal from the award of said board, said plaintiff being then a resident of said county."

The trial court sustained plaintiff's appeal and entered judgment against the defendants, who bring the case here.

The defendants contend that the trial court erred in allowing compensation to plaintiff for the period from June 8, 1917, to September 7, 1917; in allowing compensation to plaintiff from June 30, 1919, to October 2, 1919; in assessing costs against the county; and in the allowance of attorney's fee to be recovered from the county.

1. Chapter 5 of the Laws of 1923, Special Session, reads:

"An Act to amend section 1, chapter 200 of the Laws of 1923.
"Be it enacted by the Legislature of the State of Kansas:
"Section 1. That section 1, chapter 200 of the Laws of 1923 be amended to read as follows: Section 1. The state of Kansas acknowledges its indebtedness to, and promises to pay to each person, who was a resident of the state of Kansas at the time of entering the service, and who served in the world war in any branch of the army, navy or marine corps of the United States prior to November 11th, 1918, and who was honorably discharged therefrom, the sum of one dollar per day for each day of his or her entire service during the emergency created by the world war which for the purposes of this act shall be construed as commencing April 6th, 1917, and ending June 30th, 1919, which compensation shall be in addition to all pay and allowances made by the United States government.
"Sec. 2. Section 1, chapter 200, Session Laws of 1923, is repealed."

It is the contention of defendants that the word "service" in the statute means "actual service," "to work for," "to labor in behalf of," "to exert oneself continuously or steadily for," and that, unless the plaintiff was actually in the performance of duty during the period

from his enlistment until being sent to the naval training station that he is not entitled to compensation for that period.

It is to be noted that the words "service" and "served" in the statute have no qualifying words or restrictions. When plaintiff enlisted and was sworn in as a unit of the United States navy his status immediately changed. His civil rights were largely suspended. He became immediately subject to military law and was subject to military orders. His status was exactly the same as that of a soldier on leave of absence. A soldier on leave of absence, even for a definite time, is subject to be recalled to duty at any time before the expiration of the time fixed in his leave. The plaintiff in this case was in a similar situation. He was subject to call and of necessity held himself in readiness from day to day to respond for duty when the call came. He was not in position to accept employment for any definite period of time, and any employer would have hesitated to employ him, knowing that he was likely to be called to duty on a moment's notice. From the moment of his enlistment the government considered him a part of the military establishment. It recognized his service from that time and compensated him therefor. The attitude of the federal government in all of these matters was, of necessity, considered by the legislature in enacting the statute in question, and by the voters at large when the statute was submitted and adopted. This attitude of the government toward plaintiff, while not controlling on this court, is persuasive in determining the correct construction of our statute. We conclude, therefore, that the plaintiff is entitled to compensation from the time he enlisted and was sworn into the naval service of the government, although he was thereafter ordered to return to his home to await further orders.

2. Was the passage of chapter 5 of the Special Session Laws of 1923 a valid exercise of legislative authority and therefore a constitutional act?

The plaintiff contends that the legislature had no power to put a limited interpretation on an act which had the sanctity of having been voted on and adopted by the people; that the act is invalid in so far as it limits compensation to June 30, 1919.

Reference to the original act passed by the legislature of 1921 (Laws 1921, ch. 255) is helpful. It contained, among others, these provisions:

*"Be it enacted by the legislature of the state of Kansas:*

"SECTION 1. There shall be submitted to a vote of the electors of this state, at the general election to be held in the year 1922, the following act, which shall appear upon the ballot as 'An act relating to compensation for veterans of the World War'; and the vote for and against such proposition shall be taken as provided by law.

" 'AN ACT relating to compensation for veterans of the World War.

*" 'Be it enacted by the Legislature of the State of Kansas:*

" 'SECTION 1. The state of Kansas acknowledges its indebtedness to, and promises to pay to each person who was a resident of the state of Kansas at the time of his entering the service, and who served in the world war in any branch of the army, navy or marine corps of the United States prior to November 11, 1918, and who was honorably discharged therefrom, the sum of one dollar per day for each day of his or her entire service, which compensation shall be in addition to all pay and allowances made by the United States Government.' "

This act was submitted to the electors of the state of Kansas at the general election of 1922 and was adopted by the requisite constitutional majority. Pursuant thereto, chapter 200 of the Laws of 1923 was enacted in words and figures identical with the law submitted. It became effective January 19, 1923. Thereafter, and within the time therein provided, the Compensation Board (defendants here) organized and issued rules and regulations for the receipt and examination of claims and the payment of compensation as provided for by the act. A number of claims were received, audited and approved for payment, but no payment was actually made to any claimant until after the passage and taking effect of chapter 5 of the Special Session Laws of 1923.

Chapter 5 of the Special Session Laws of 1923 purports to repeal section 1 of chapter 200 of the Laws of 1923. In reality it reënacts the section in exact words, except that it adds thereto the words, "during the emergency created by the World War which, for the purposes of this act shall be construed as commencing April 6, 1917, and ending June 30, 1919." The effect of the amendment was to make certain what before had been uncertain. It defined the intent and meaning of the soldiers' adjusted compensation act in so far as termination of the soldier's service in the World War was concerned. Nothing else was attempted or accomplished. This reduces the matter to the question of whether or not the legislature may construe an act passed by it, even though that act was passed in pursuance of a mandate received from the people. The mandate, in this case, was not a constitutional amendment, but was the adoption

of an act acknowledging an indebtedness of more than a million dollars in the manner prescribed by the constitution.

There are certain well-settled rules of construction where a constitutional provision is either silent or ambiguous on a particular point.

In *People v. Albertson,* 55 N. Y. 54, 55, it was said:

"Certain leading principles, entering into the consideration of the question presented, are so well settled and have been so often reiterated in different forms that they scarcely require repetition now, and need not be elaborated.

"1. Great respect is due to the intelligent and deliberate judgment of the legislature as to the constitutionality of a law, and no statute should be lightly or inconsiderately adjudged to be in contravention of the constitution. A law which has received the sanction of the legislature and the approval of the executive should only be held void, as repugnant to the constitution, when the repugnancy is clearly demonstrated. (*People v. Briggs,* 50 N. Y. 553; *Adams v. Howe,* 14 Mass. 340.) There should be no reasonable doubt of the unconstitutionality of a statute before it should be annulled by judicial action. (*People v. Supervisors of Orange,* 17 N. Y. 235; *Ex parte* McCollum, 1 Cowen, 550.)

"2. Courts do not sit in review of the discretion of the legislature, or determine upon the expediency, wisdom or propriety of legislative action in matters within the power of the legislature. Every intendment is in favor of the validity of statutes; and no motive, purpose or intent can be imputed to the legislature, in the enactment of a law, other than such as are apparent upon its face, and to be gathered from the terms of the law itself."

In *The State, ex rel., v. Davis,* 114 Kan. 283, 217 Pac. 905, it was said:

"While the construction of a statute is a judicial and not a legislative function, a legislative construction is entitled to weight. Antecedent, contemporary and subsequent action of the legislature and the condition of affairs when the statute was enacted may be considered in construing it. (See, *State, ex rel., v. Kelly,* supra, and cases cited.) The legislature which enacted chapter 209, Laws of 1923, was largely the same legislature that enacted chapter 255 of the Laws of 1921. The senate was comprised of the same membership, and approximately one-third of the members of the house were the same in 1923 as in 1921." (p. 287.)

"A construction of a statute by the legislature, as enacted by the language of subsequent enactments is entitled to great weight, especially where such construction has been contemporaneous with the passage of the original act, etc." (36 Cyc. 1142, 12 C. J. 714. See, also, 8 Cyc. 737, *City of Houston v. Scottish Rite Benev. Ass'n.* 233 S. W. 551 [Tex. civ. app.]; *Gantt v. Brown,* 238 Mo. 560, *Board of Education of Louisville v. Sea,* 167 Ky. 772.)

In *Hubbard v. Dunne,* 276 Ill. 598, it was said:

"The presumption is always in favor of the validity of a law, and unless it is in plain and obvious conflict with the constitution the court will not

pronounce against its constitutionality, and in doubtful cases the doubt will be resolved in favor of the legislative power." (Syl. ¶ 4.)

"If the language of an amendment to the constitution, framed by the legislature, is ambiguous, the construction of such language by the subsequent acts of the legislature is entitled to consideration." (Syl. ¶ 8.)

In the opinion it was said:

"Even if we assume, for the sake of argument, that the language of the amendment of 1908 is ambiguous, the construction of said amendment and the interpretation of the language thereof by the General Assembly, as shown by the terms of the act of 1915, are entitled to consideration. It was the legislative department that framed the language of the amendment and adopted the resolution providing for submitting it to a vote of the people. The amendment so framed and submitted was adopted by the vote of the people. The act in question was passed by the same department of the government that framed the amendment, and the language of the amendment was interpreted by that department in the passage of the act in question. The construction and interpretation of the legislature are entitled to weight. (*People v. Fidelity and Casualty Co.* 153 Ill. 25.) Under the rules of construction adopted by the courts we are unable to say that the act in question is unconstitutional." (p. 614.)

In *Cook County v. Healy*, 222 Ill. 310, it was said:

"Where the words of a constitutional provision admit of doubt, courts should consider a contemporaneous and practical construction of such provision given by the legislature and those concerned in the administration of the law, and also the injurious consequences which would follow a different construction; and if such a construction has been long continued and acquiesced in by the public, it may be equal in force to a judicial construction." (Syl. ¶ 4.)

In *The State v. Shawnee County*, 83 Kan. 199, 110 Pac. 92, it was said:

"It is a fundamental principle of constitutional law that the legislature has power to indicate by a later act what its intention was in passing an earlier one. In such event, whatever lawyer and layman may have understood or courts may have decided, the legislature's interpretation is binding in all cases after it has been made manifest." (p. 203.)

Where an act is silent on a question, as here, where it is silent as to the date on which the World War ended, resort to extrinsic facts is permitted, to ascertain its meaning. (See, *People v. Schoonmaker*, 63 Barb. 44; *Curry v. Lehman*, 55 Fla. 847; 47 So. 18; *Gilbert v. Craddock*, 67 Kan. 346, 72 Pac. 869; 44 Century Digest, 2846, § 290; *Commonwealth v. International Harvester Co.*, 131 Ky. 551.)

It is urged that the world war actually ended when the armistice was signed, November 11, 1918, although the date of the proclamation of peace was July 2, 1921.

Ordinarily, a war is regarded as ending when a treaty of peace between the belligerents is ratified. The circumstances attending the conclusion of the world war were unusual, in that a delay was occasioned over a controversy as to whether the United States should become a party to the League of Nations. As a result of this controversy, the treaty of peace was not ratified by the United States until long after peace was an accomplished fact between the other principal nations that had been engaged in the conflict. It cannot be seriously urged, from a practical standpoint, that the world war continued in progress after all the principal European participants had ratified terms of peace. Congress attempted to declare the war at an end by resolution, and did effectively declare it at an end for the purpose of applying certain war statutes. In a practical sense the war may fairly be said to have been over at some indefinite date—a date, which, for purposes of adjusted compensation for the soldiers of this state, the legislature could make definite. We conclude that the legislature did not exceed its power in declaring that, for the purposes of the act under consideration, the date was June 30, 1919.

3. The question is raised whether or not the trial court erred in assessing the costs of the action against the county. Section 7 of chapter 205 of the Laws of 1923 provides that "the applicant shall not be required to give security for costs, and such costs as are not assessed against applicant shall be paid by the county. The court shall have power to award or apportion costs." In this case, however, the court included in the costs an attorney fee for the applicant in the amount of $100. The statute makes no provision for the payment of attorneys' fees by the county, and they could not be assessed as costs against the county, except by affirmative act of the legislature. The court exceeded its power in assessing the attorney's fee as costs against the county, but the assessment of the other costs was proper. The provision of the statute that "The applicant may be represented by counsel but the fees of said counsel shall be determined and allowed by the court," is a provision for the protection of the applicant for compensation, in order that he may not be charged an exorbitant fee.

15—115 Kan.

The judgment is affirmed in so far as the plaintiff was allowed compensation from the date of his enlistment, June 8, 1917, to September 7, 1917, and in so far as the costs of the case, other than attorney's fees, may be charged to the county, and is reversed, with directions to enter judgment for defendants, in so far as it allowed the plaintiff compensation from June 30, 1919, to October 2, 1919, and the charging of the attorney's fee, as costs, to the county.

Burch, J.: not sitting.

Harvey, J.: dissenting as to the first and second paragraphs of the syllabus and corresponding parts of the opinion.