No. 34,457

SAMUEL RICHARDSON, Appellee, v. THE KANSAS SOLDIERS COMPENSATION BOARD, Appellant.

(92 P. 2d 114)

Opinion filed July 8, 1939.

Jay S. Parker, attorney general, E. V. Bruce, assistant attorney general, Arthur J. Stanley, Jr., county attorney, and T. P. Palmer, deputy county attorney, for the appellant.

Errett P. Scrivner, of Kansas City, for the appellee.

Malcolm McNaughton and James N. Snyder, both of Leavenworth, as amici curiae.

The opinion of the court was delivered by

HARVEY, J.: This is a soldiers compensation case. The questions involved are the validity of chapter 280, Laws 1939, and if valid, whether it is applicable in this case. Chapter 280, Laws 1939, effective February 21, 1939, amends and repeals G. S. 1935, 73-102, which originally was section 1, chapter 200, Laws 1923, as amended by chapter 5, Laws 1923, Special Session. As we print it here, the part not within the brackets and not italicized was the original section. The portion within the brackets was inserted by the amendment in 1923, and the italicized portion was added by the amendment in 1939:

"The state of Kansas acknowledges its indebtedness to, and promises to pay to each person, who was a resident of the state of Kansas at the time of entering the service, and who served in the World War in any branch of the army, navy or marine corps of the United States prior to November 11, 1918,

and who was honorably discharged therefrom, the sum of one dollar per day for each day of his or her entire service [during the emergency created by the World War which for the purposes of this act shall be construed as commencing April 6, 1917, and ending June 30, 1919], which compensation shall be in addition to all pay and allowances made by the United States government: *Provided, That no payment shall be made under the provisions of this section to any person who has received a bonus, gratuity or compensation, of a nature similar to that provided for in this act, from any other state in the United States. The term 'resident of the state of Kansas,' as used in this section, means any individual who gave the state of Kansas, or any specific place in this state, as his or her place of residence at the time of entering the military or naval forces of the United States, for such period, without regard to the place of enlistment, commission, or induction. The proof of such residence shall be the official records on file in the war and navy departments of the United States: Provided further, That the provisions of this act shall apply to claims now pending before the Kansas soldiers compensation board of the state of Kansas."*

The claimant, Samuel Richardson, filed his claim for compensation with the Kansas soldiers' compensation board, in which he stated, among other things, that he was born December 28, 1896; that on April 7, 1916, he enlisted in company G of the third Missouri infantry; that he was mustered into service of the United States April 12, 1917, and served until May 6, 1919, when he was honorably discharged, and that he had made application for a soldier's bonus to the state of Missouri and had received the same; that his parents, whose names were given, resided at a stated address in Kansas City, Kan., which place was his home, and that he was in fact a resident of Kansas City, Kan., at the time of entering the service. The compensation board considered his claim and disallowed it October 3, 1938, stating as the reason therefor:

"You gave Kansas City, Mo., as your residence when you enlisted and have failed to prove your claim to Kansas as your residence at the time you entered the service."

He appealed from this ruling to the district court of Wyandotte county, where a trial was had May 11, 1939. The court found:

"That the claimant, Samuel Richardson, enlisted in the United States army on the 7th day of April, 1916, and was mustered into federal service on the 12th day of April, 1917, and was honorably discharged from that service on the 6th day of May, 1919. That the said Samuel Richardson at the time of his enlistmeent and entry into the federal service in the United States army was, and had been, a bona fide resident of Kansas City, Kan."

It was further found that he was entitled to compensation, and judgment was rendered accordingly. In doing so the court declined

to apply chapter 280, Laws 1939. The compensation board has appealed.

Appellant concedes there was parol evidence sufficient to sustain the finding of the trial court if no attention is to be paid to chapter 280, Laws 1939, but it is argued the statute is applicable and that under it the claim should have been disallowed.

In support of the judgment of the trial court it is argued on behalf of appellee that chapter 280, Laws 1939, "was an ineffective effort to abrogate the rights of this appellee (1) by attempting to bar his recovery of soldiers compensation by reason of his having received a bonus or bounty (not compensation) from another state; and (2) by attempting to invade the powers of the judicial branch·of the government by an arbitrary definition of residence." (3) It is further contended that in any event the statute is not applicable to this case for the reason that his claim was not "pending before the Kansas Soldiers' Compensation Board" at the time of the effective date of the act.

A brief history of our soldiers compensation act, its amendments and interpretations, may help us to understand the purpose of our legislature in enacting chapter 280, Laws 1939. More than 80,000 residents of Kansas served in the World War. When they returned home, in recognition of their valued and patriotic services to the state as well as to the federal government, the relatively nominal monetary consideration they had received compared with civilian workers, and the difficulty many of them had in getting readjusted in industry, the state regarded itself as indebted to each of them in the sum of one dollar per day for the time served. Since this was an extraordinary·expenditure, and would create a debt in excess of the sum the legislature alone was authorized to create, the proposition was submitted to a vote of the electors of the state (Laws 1921, ch. 255; G. S. 1935, 73-101). At the general election in November, 1922, the vote was more than two to one in favor of the proposition, and the legislature which met in January, 1923, enacted the statute (Laws 1923, ch. 200), as it had been submitted to the electors. It contained four short sections and another fixing the effective date. The first section was as printed above (without the parts in brackets or italics). The second authorized certain state officers to issue bonds of the state to the amount of $25,000,000 to pay the debt recognized by section 1 of the act, and fixed the terms and maturity dates of the bonds. The third levied upon all the taxable property

of the state an annual tax sufficient to pay the semiannual interest and the bonds as they matured, and appropriated the proceeds of such tax to that purpose. The fourth section set up a board to administer the payments under the act and prescribed its duties.

Promptly an action in quo warranto was brought in this court which questioned the validity of the act on many constitutional grounds and also upon the ground that the act was indefinite and uncertain. The court considered all the questions raised (*State, ex rel., v. Davis,* 113 Kan. 4, 213 Pac. 171) and held that under sections 5, 6 and 7 of article 11 of our constitution, the state had power to contract the debt for the purpose of paying Kansas soldiers and sailors for their services in the World War; that the debt was contracted for a public purpose. It further held that if the act "is uncertain or indefinite in any particular, that uncertainty and indefiniteness can be removed by subsequent legislation not inconsistent with that act." The decision of the court was announced on February 16, 1923, and the opinion was written and filed March 5, 1923. Concerning questions of uncertainty, it was said in the opinion:

"The plaintiff contends that the law is uncertain and indefinite and therefore invalid, and further contends that if it does not include those who died in the service or since, it is invalid. These contentions are not good, for the reason that if there is any indefiniteness concerning who are beneficiaries under the law or if the law is uncertain in any particular, it can be made certain and definite by subsequent legislation not inconsistent with the law approved by the people. The law was enacted by the people of this state, acting in their sovereign capacity, and must be upheld unless it clearly violates some constitutional provision." (p. 10.)

At the time this decision was announced the legislature was in session and it promptly passed several statutes relating to this subject. In one of them (Laws 1923, ch. 202) it was declared to have been the intention of the legislature in enacting chapter 255, Laws 1921, and chapter 200, Laws 1923, "to include by the terms therein used any person, otherwise qualified, who served honorably but died before receiving a discharge." Chapter 201, Laws 1923, amended section 4 of chapter 200, Laws 1923, by creating a new board to administer the act and prescribing its duties. Chapter 203 provided for the appointment of a director and examiners of compensation for veterans and prescribed their duties and fixed their salaries and tenure of office. Chapter 205 provided a court procedure upon

the disallowance of claims by the compensation board. Chapters 206, 207, 209 and 210 pertained to various features of the same subject.

The validity of these several acts was questioned in an original proceeding in quo warranto (*State, ex rel., v. Davis*, 113 Kan. 584, 217 Pac. 903) on the grounds they had not been submitted to a vote of the electors, and modified the act so submitted, and for various other reasons, all of which were considered, and the acts were held to be valid.

In *State, ex rel., v. Davis*, 114 Kan. 270, 217 Pac. 905, questions were raised and determined as to the rights of several classes of persons who served in some branch of the army, navy or marine corps, to receive compensation under the act. Some duties and powers of the board to administer the act were raised and determined. It was also held that one entitled to compensation might draw the same to the date of the proclamation of peace, July 2, 1921, if he served that long. By that time, in July, 1923, it appears to have been determined that the $25,000,000 mentioned in section 2 of chapter 200, Laws 1923, would be inadequate to pay all the claims that might properly be allowed under the act, in which event the court held the funds on hand would have to be prorated among the claimants. Upon a rehearing of that case (114 Kan. 283, 217 Pac. 905, opinion filed August 4, 1923), it was held that the legislature might issue additional bonds to raise the funds necessary to make the payments provided for by section 1 of the act. The validity of chapter 209, Laws 1923, was sustained. At a special session of the legislature in August, 1923, section 1 of chapter 200 of the Laws of 1923 was amended by inserting the part in brackets, as printed earlier in this opinion. This fixed the date of July 30, 1919, as the latest date on which compensation would be paid. In *Dew v. Davis et al.*, 115 Kan. 219, 222 Pac. 750, the validity of that act was questioned on the ground that it was an invalid limitation upon the debt the state had acknowledged and agreed to pay contained in section 1 of the act submitted to and adopted by the electors. The court considered this and other objections made and held the act to be valid, for the reason, as stated in the opinion:

"In a practical sense the war may fairly be said to have been over at some indefinite date—a date, which for purpose of adjusted compensation for the soldiers of this state, the legislature could make definite." (p. 225.) (See, also, *Goebel v. Davis et al.*, 115 Kan. 226, 222 Pac. 754.)

The legislature at the special session of 1923 passed an act (ch. 6) authorizing the issue of an additional $7,000,000 in bonds, if necessary, to carry out the provisions of chapter 200, Laws 1923. This was sustained in *State, ex rel., v. Davis*, 115 Kan. 10, 221 Pac. 895. It also passed an act (ch. 7) relating to exemptions of the sums paid and making more definite the persons to whom payment might be made. This was approved in *In re Appeal of Ralph W. Oman, Administrator*, 115 Kan. 232, 222 Pac. 895. It also passed an act (ch. 8) fixing June 1, 1924, as the last date for filing claims for compensation. The authority of the legislature to do this was sustained in *Waddell v. Soldiers' Compensation Board*, 117 Kan. 149, 150, 230 Pac. 77. This time has been extended repeatedly by subsequent acts of the legislature.

This résumé is sufficient to demonstrate the fact that the original soldiers' compensation act, as submitted by chapter 255, Laws 1921, adopted by a vote of the electors and enacted by chapter 200, Laws 1923, has been amended and supplemented by numerous acts of the legislature, all of which have been sustained by this court when questioned. None of them, however, changed the primary obligation and purpose of the act, namely, for the state "to pay to each person, who was a resident of the state of Kansas at the time of entering the service, and who served in the World War in any branch of the army, navy or marine corps of the United State prior to November 11, 1918, and who was honorably discharged therefrom, the sum of one dollar per day for each day of his or her entire service." It was argued that chapter 5, Laws 1923, Special Session, which named June 30, 1919, as the latest date to which compensation could be computed, was a restriction and limitation upon the fundamental provisions of the compensation act; but as we have seen, that contention was denied and the statute was upheld. (*Dew v. Davis et al.*, supra.) It was contended that chapter 8, Laws 1923, Special Session, which fixed January 1, 1924, as the last date for filing claims, was a restriction upon the fundamental purpose of the compensation act; but that contention was denied and the act was sustained. (*Waddell v. Soldiers' Compensation Board*, supra.)

We turn now to chapter 280, Laws 1939, to consider the purpose the legislature had in mind in enacting this statute. In the administration of the soldiers compensation act perhaps the question which most frequently has given rise to controversy is whether the claimant was "a resident of the state of Kansas at the time of his

entering the service." Naturally, when the records of the state or federal government showed the claimant to have been a resident of Kansas at the time he entered the service, which was true in most instances, there was no trouble about it. But a relatively few cases, though numerous enough to cause a lot of trouble, have arisen in which the records kept by this state did not show the claimant to have been a resident of the state at the time he entered the service, and the records of the federal government show him to have been a resident of some other state at that time, which state was given credit for his services. In some instances the claimant had presented a claim for a similar payment under the laws of that state, which required a showing on his part that he was a resident of that state when he entered the service, which claim had been allowed and paid. The following cases have reached this court involving the question of whether the claimant was a resident of the state at the time he entered the service: *In re Soldiers' Compensation Appeals,* 116 Kan. 601, 677, 227 Pac. 1117, 229 Pac. 355; (see *Molinar v. Board,* p. 678; *Doniphan v. Davis,* p. 680); *Baldwin v. Soldiers' Compensation Board,* 117 Kan. 129, 230 Pac. 82; *Parrish v. Soldiers' Compensation Board,* 117 Kan. 301, 231 Pac. 332; *Cault v. Soldiers' Compensation Board,* 118 Kan. 589, 235 Pac. 850; *Beamer v. Soldiers' Compensation Board,* 119 Kan. 476, 239 Pac. 764; *Jella v. Soldiers' Compensation Board,* 121 Kan. 360, 246 Pac. 521; *Modest v. Soldiers' Compensation Board,* 121 Kan. 681, 249 Pac. 588; *Deckwa v. Soldiers' Compensation Board,* 121 Kan. 858, 250 Pac. 322; *Allen v. Soldiers' Compensation Board,* 123 Kan. 308, 255 Pac. 76; *Knuth v. Kansas Compensation Board,* 137 Kan. 392, 20 P. 2d 471; *Kaiser v. Soldiers' Compensation Board,* 142 Kan. 295, 46 Pac. 2d 883; *Hipchen v. Soldiers' Compensation Board,* 144 Kan. 517, 61 P. 2d 878; *Vennum v. Soldiers' Compensation Board,* 147 Kan. 639, 77 P. 2d 980.

Perhaps this list is not complete. In the absence of a statutory rule respecting the evidence to be received and considered in determining the question, the court, in the cases cited, has applied the general rule that the question of whether a person was a resident of a particular place at a specified time is a question of fact to be determined by the trial court upon the evidence presented at the trial, and in reviewing the decision of the trial court in such a case this court has followed the general rule that it will not disturb the finding of the trial court on that question when the record shows it

is supported by substantial competent evidence. In the instances where there was record evidence tending to show that the claimant was a resident of some other state when he entered the service, that has sometimes been explained or controverted, or actually overthrown, by parol evidence, until the question has come to be regarded as simply an ordinary question of fact to be determined by the trial court on the evidence adduced. The legislature might well have thought that this has led to hardships, and in instances to unjust results. It is now more than twenty years since anyone who could claim compensation under our soldiers' compensation act entered the service. The parol testimony that claimant was a resident at the time he entered the service sufficient to explain or overthrow documentary evidence to the contrary ordinarily comes from near relatives or immediate friends of the claimant and is, at least in a sense, self serving. The compensation board is practically helpless as against an improper claim of that kind. It has no facilities for investigating the facts as they might be shown by parol evidence, and if it had investigators for that purpose the possibility of finding such evidence is remote. Some of the cases tend to show that the hunting up of the questionable residence claims has developed into an industry. (See *Sharer v. Soldiers' Compensation Board*, 132 Kan. 572, 296 Pac. 729.) The legislature may well have thought that the state was being imposed upon.

The purpose of the legislature obviously was to make a statutory rule of evidence on the subject. It has done this in two parts, by providing, *first*—

"That no payment shall be made under the provisions of this section to any person who has received a bonus, gratuity or compensation, of a nature similar to that provided for in this act, from any other state in the United States." (Laws 1939, ch. 280.)

Appellee contends that this fixes an arbitrary rule not having a fundamentally reasonable basis, and as such, that it invalidly infringes upon the function of the judiciary. In two of the cases which reached this court (*Parrish v. Soldiers' Compensation Board*, supra, and *Knuth v. Kansas Compensation Board*, supra), because of the peculiar facts, it appears the claimant was able to make a claim in each state without making conflicting representations. When a provision in a statute can be construed so that it is valid, that construction will be given to it, although it is open to a construction which would render it invalid. Construing this provision of the statute in

that light, it seems clear that what the legislature had in mind was that applying for and receiving a bonus, gratuity or compensation similar to that here being considered, from another state would defeat his claim here only when he had to make a showing in the other state, in order to receive payment, that he was a resident of that state at the time he entered the service. So construed we regard it as a fair and valid provision.

The legislature then provided:

"The term 'resident of the state of Kansas,' as used in this section, means any individual who gave the state of Kansas, or any specific place in this state, as his or her place of residence at the time of entering the military or naval forces of the United States, for such period, without regard to the place of enlistment, commission, or induction." (Laws 1939, ch. 280.)

We see nothing wrong with that provision. The statute continues:

"The proof of such residence shall be the official records on file in the war and navy departments of the United States."

The original act provided for paying those "who served in the World War in any branch of the army, navy or marine corps of the United States." It is a well-known fact, of which the court will take judicial notice, that the army and navy keep official records of those who served in those departments. We think it would not have been an unreasonable construction to have given the statute, in the first instance, that the records of those departments should be the guide as to the residence of the soldiers, sailors and marines who served from Kansas. At any rate, it is not an unreasonable thing for the legislature to place that interpretation upon the term "resident of the state of Kansas." We recognize that, generally speaking, it is the function of a legislature to enact laws and the function of the judiciary to interpret them; but when a legislature, by an act duly passed, states its interpretation of language then used, or previously used, in the statute, that interpretation is entitled to great weight. This has been so declared in the construction of the soldiers' compensation act and the statutes amendatory and supplemental thereto. (*Dew v. Davis et al.,* 115 Kan. 219, 222 Pac. 750; *Kinyon v. Soldiers' Compensation Board,* 118 Kan. 367, 234 Pac. 949.) Our conclusion is that the statute questioned is valid.

Appellee calls attention to the last proviso, which reads:

"That the provisions of this act shall apply to claims now pending before the Kansas soldiers' compensation board of the state of Kansas." (Laws 1939, ch. 280.)

And contends that in any event the statute cannot apply to this case because it was not pending before the Kansas compensation board at the effective date of the act. The claim had been disallowed and an appeal had been taken to the district court of Wyandotte county. There is reason, however, to say that a claim is pending before the soldiers' compensation board until it is finally paid. (See *Jella v. Soldiers' Compensation Board,* 121 Kan. 360, 246 Pac. 521.) But we do not care to rest our decision upon this point alone. The wording of the statute is not that it shall apply *only* to claims then pending before the compensation board. Irrespective of this provision the statute would have applied to any claim pending in court. It is a statute changing the rule of evidence. Unless the rule of evidence is one expressly sanctioned by the constitution ". . . the *legislature has the power* to alter or create any rule of evidence. This is so for reasons inherent in the nature of legislative functions. . . . There can be no vested right in a rule of evidence. Those rules are merely methods for ascertaining facts. It must be supposed that a change of the law merely makes it more likely that the facts will be truly ascertained." (Wigmore on Evidence, 2d ed., § 7. See, also, 12 C. J. 1233; *Jones v. Hickey,* 80 Kan. 109, 114, 102 Pac. 247; *Reitler v. Harris,* 80 Kan. 148, 102 Pac. 249, affirmed 223 U. S. 437, 32 S. C. 248; and *State, ex rel., v. Public Service Comm.,* 135 Kan. 491, 495, 11 P. 2d 999.) Since no one has a vested right in a rule of evidence a statute changing such a rule is effective immediately to all pending cases as well as future cases which may arise. (*State v. Marshall,* 95 Kan. 628, 148 Pac. 675.) We think the statute would have applied to cases then pending before the Kansas soldiers' compensation board if this clause had not been inserted in the statute. Apparently it was inserted there out of an abundance of caution. It does not destroy the application of the statute to cases then pending before the compensation board or the courts, as well as those which may arise in the future.

The soldiers' compensation board denied appellee's claim for the reason that he gave Kansas City, Mo., as his residence when he enlisted. In the record brought to us there is nothing to dispute that fact. It is conceded that the claimant previously had presented a claim for a bonus to the state of Missouri, and that the same has been allowed and paid. In doing so he was required to make a showing that he was "a bona fide resident of the state of Missouri

at least during the twelve months prior to the sixth day of April, nineteen hundred and seventeen." (Art. IV, § 44b, Const. of Mo., Laws of Mo. 1921, Second Extra Session, p. 7.) It would seem that much of the language used in *Molinar v. Board,* supra, would be applicable here.

The trial court did not regard this statute as applicable to the case. This position was erroneous and requires a reversal of the judgment. The soldiers' compensation board disallowed the claim on the ground that when the claimant entered the service he gave Kansas City, Mo., as his place of residence, and that fact is not controverted from anything that appears in the record. It is conceded claimant applied for and received a bonus from the state of Missouri. In doing so he was compelled to show that he was a bona fide resident of the state of Missouri at the time he enlisted and to within a few days of the time he was called into active service. It is clear that, applying the statute, his claim should be disallowed. It will serve no useful purpose, therefore, to direct a new trial, and judgment should be ordered on the authority of G. S. 1935, 60-3317. (*Prudential Ins. Co. v. Foster,* 139 Kan. 112, 30 P. 2d 104; *J. I. Case Co. v. Bodecker,* 141 Kan. 637, 640, 42 P. 2d 571; *Majors v. Seaton,* 142 Kan. 274, 46 P. 2d 34.)

The judgment of the court below is reversed, with directions to disallow the claim.